Linda MURPHY, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (CITY OF PHILADELPHIA), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 28, 2005.

Decided March 29, 2005.

---

Michael J. Malloy, Media, for petitioner.

Ruth Pearson, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, and COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

Linda Murphy (Claimant) appeals an order of the Workers' Compensation Appeal Board (Board), that affirmed the order of a Workers' Compensation Judge (WCJ) granting the City of Philadelphia's (Employer) review petition, which allowed Employer both to assert a subrogation lien, and to take an offset against Claimant's employer-funded service-connected disability pension. Claimant also questions whether Employer was entitled to subrogation on certain specific medical expenses for which there, allegedly, were either duplicate or unexplained billings.

Claimant was employed by Employer as a police officer and was injured during the scope of her employment on October 11, 1993.[1] In 1993, Claimant filed an action against the third party tortfeasor whose actions had, allegedly, caused her injury. On April 22, 1997 the parties reached a settlement and Claimant received $280,000.

Following her injury, Claimant initially received Injury On Duty (IOD) benefits under Employer's Regulation 32,[2] rather than workers' compensation benefits.[3] La-

---

1. The record does not disclose the facts surrounding the injury, but it apparently involved a tort.

2. Regulation 32 is a comprehensive regulatory scheme establishing, among other things, injury and disability benefits for various civil servants in the City of Philadelphia. § 32.01. Philadelphia Civil Service Regulation 32, *available at http://www.phila.gov/personnel/webregs/reg3200.htm.*

3. According to the Director of Provider Relations for CompServices, which administers

Employer's workers' compensation plan, IOD employees who continue to treat with city-sponsored medical providers can accrue all their benefits and receive their full salary until they return to work. (March 9, 2001 Deposition of John J. Madigan, N.T. at 11.) Madigan believed, and the WCJ found, Claimant received 80 percent of her pay while on IOD status. (*Id.* at 13, 595 A.2d 680; WCJ Adjudication, Finding of Fact (FOF) ¶ 3(e).) The discrepancy in this percentage is not explained in the record.

ter, however, Claimant opted out of IOD status by withdrawing a civil service appeal she had filed.[4] When Claimant withdrew that appeal she became entitled to, and began receiving, workers' compensation benefits in November 1995, pursuant to a Notice of Compensation Payable. After Claimant began receiving the workers' compensation benefits, she applied for a service-connected disability pension from the City of Philadelphia Board of Pensions and Retirement. This pension was approved on November 3, 1998, retroactive to Claimant's last day of employment, November 3, 1997. Employer is self-insured for workers' compensation purposes. Therefore, when it paid the retroactive pension benefits, it deducted an offset totaling $28,909.60 for workers' compensation benefits it had paid from November 3, 1997 through January 16, 1999. Then, in March 2000, Employer filed a Petition to Modify, Suspend and/or Review Compensation, alleging it was also entitled to a subrogation lien from Claimant's third party recovery.

Ultimately, at the hearing, Claimant agreed that Employer was entitled to subrogation, but disagreed that it also had a right to the pension offset.[5] In addition, Claimant challenged Employer's position that it was entitled to subrogation on certain medical bills. The reason for Claimant's challenge was her assertion that Employer had made duplicate payments for those medical services. The WCJ held that Employer was entitled to both the subrogation lien and the pension offset. His order did not address the question of whether Employer had made duplicate payments of the medical bills in issue. Claimant appealed and the Board affirmed. In addition to holding that both subrogation and a pension offset were proper, the Board also concluded that Claimant never presented any specific evidence to support her allegation that certain medical bills had been paid twice. Claimant now appeals to this Court.[6]

On appeal, Claimant first contends that Employer should not be permitted to offset her pension benefits against her workers' compensation payments to the extent of $35,797.98 still due Employer on the subrogation lien.[7] However, she does *not* contest the fact that Employer is entitled to assert a subrogation lien against her $280,000.00 recovery.

Thus, the central issue in this case is whether Employer is permitted to take both the service-connected disability pen-

---

4. The record does not disclose the facts surrounding the civil service appeal.

5. Claimant did receive approximately $12,000–$14,000 back from Employer. This amount was her contribution to the pension fund. (FOF ¶ 3(g).)

6. Our standard of review where, as here, both parties have presented evidence is limited to whether the findings of fact are supported by substantial evidence and whether there has been any constitutional violation or legal error. *Russell v. Workmen's Compensation Appeal Bd. (Volkswagen of America)*, 121 Pa. Cmwlth. 436, 550 A.2d 1364 (1988).

7. The WCJ found credible the following calculations of Lisa Matrisian, a Subrogation Specialist for CompServices, Inc., Employer's third party administrator:

Employer's total medical and indemnity lien was $177,451.03 and the balance of recovery was $102,548.97. The pro rata share of recovery was .63. The pro-rata share of the expenses of recovery was $66,653.05 ($105,798.50 × .63.) The net recovery of the workers' compensation lien was $110,797.98 ($177,451.03–$66,653.05). (FOF ¶ 2(h).) Claimant had already reimbursed Employer $75,000.00 of the $110,797.98 lien amount in December 2000, (FOF ¶¶ 3(k), 10), leaving a subrogation lien amount of $35,797.98 still due to Employer. (FOF ¶ 10.)

sion offset and the subrogation lien against Claimant's workers' compensation benefits. Before we can answer, we must first examine when each is permitted, as well as the legal authority and purposes underlying both the pension offset and the subrogation lien.

 The test for whether pension benefits may be offset against workers' compensation benefits depends upon whether the pension payments were made as a result of the claimant's inability to work. *Bethlehem Steel Corp. v. Workers' Compensation Appeal Bd. (Gounaris)*, 714 A.2d 550 (Pa.Cmwlth.1998), *petition for allowance of appeal denied*, 557 Pa. 641, 732 A.2d 1211 (1998). If payments are made only due to an accrued entitlement built up as a result of the claimant's employment, such as wages, no offset is permitted. *Id.* If, however, the payments are made in lieu of workers' compensation, the employer is entitled to the offset. See *id.*

· We distinguished between pension payments that are in lieu of workers' compensation and those that are in the nature of deferred compensation in *Toborkey v. Workmen' s Compensation Appeal Bd. (H.J.Heinz)*, 655 A.2d 636 (Pa.Cmwlth. 1995), *petition for allowance of appeal denied*, 541 Pa. 655, 664 A.2d 544 (1995). There, the employer's retirement plan offered a disability pension if the employee had at least ten years of service with employer and was totally disabled, irrespective of the cause of the disability. For the first two to three years employees contributed to the pension fund but, thereafter, it was entirely employer funded in accordance with the provisions of the collective bargaining agreement. In addition, payments were calculated based on years of service. In that situation, we concluded that the pension payments were not in lieu

of workers' compensation but, rather, were in the nature of deferred compensation for work previously performed and, therefore, employer was not entitled to a pension offset. We reached the same result in *Bethlehem Steel.* There, the pension provision specifically provided that workers' compensation benefits could not be deducted from disability pension payments prior to the time the claimant reached 65 years of age. We, thus, concluded that the payments were in the nature of wages for work performed and did not allow an offset.

 The language in a pension agreement can also be determinative. For example, in *Allegheny Ludlum, Inc. v. Workmen's Compensation Appeal Bd. (Pavlik)*, 141 Pa.Cmwlth.219, 595 A.2d 680 (1991), the pension agreement at issue specifically provided that "[a]ny amount paid to · . . . any participant on account of injury or occupational disease incurred in the course of his employment . . . . shall be deducted from or charged against the amount [of pension] . . . ." *Id.* at 684 (emphasis removed from original). From this language, we concluded that the pension payments were in lieu of compensation and, therefore, permitted the offset.

 In the case at bar, John J. Madigan, the Director of Provider Relations for CompServices, testified that when, as here, an employee has a work-related injury and is not on IOD status or sick leave, Employer makes workers' compensation payments, which it calls "gap payments." (Madigan N.T. at 19–20.) Madigan explained that gap payments are "payments paid to the individual while they are being processed by the Board of Pensions and Retirement for their service-connected disability pensions."[8] (Madigan N.T. at 20.)

---

8. Madigan explained that, "[a] service con- nected disability pension is defined as a per-

CompServices continues to make those payments until it receives written notice that service-connected disability benefits have been awarded. *Id.* Those benefits are always awarded to a retroactive date. (Madigan N.T. at 20–22.) Because both the workers' compensation gap payments and the pension benefits are for injuries occurring on duty, CompServices deducts the workers' compensation payments from the pension award. As Madigan explained, "literally the City has just taken money out of one side of its pockets and put it into the other side of its pocket." (Madigan N.T. at 23.) The WCJ found Madigan's testimony credible. This testimony is sufficient to support the finding that Claimant's pension benefits were paid to her because her injury was work-related. Therefore, under *Bethlehem Steel,* we conclude that a pension offset is proper here because the pension benefits were paid in lieu of workers' compensation.

■ Employer, here, has already successfully asserted a subrogation lien against the damages Claimant received from a third party that was responsible for the injuries that occurred during Claimant's employment. Claimant argues, therefore, relying on the principle of "equity," that Employer should not be entitled to both subrogation and a pension offset. To determine whether this is correct, we need to examine the purposes of the two different provisions in the workers' compensation law at issue here.

■ The Workers' Compensation Act provides Employer with an *absolute* right to subrogation.[9] *Thompson v. Workers' Compensation Appeal Bd. (USF&G),* 566 Pa. 420, 781 A.2d 1146 (2001). The ratio-

nale underlying the right to subrogation is threefold. First, it prevents double recovery for the same injury by the claimant. Second, it prevents the employer from having to make compensation payments which resulted from the negligence of a third party. Finally, it prevents a third party from escaping liability for his negligence. *Dale Mfg. Co. v. Bressi,* 491 Pa. 493, 496, 421 A.2d 653, 654 (1980).

■ As described previously, the Act provides for a pension offset where the pension payments are made in lieu of workers' compensation.[10] The rationale underlying the right to this pension offset is two-fold. It prevents a self-insured employer from having to pay twice for the same disability, which is contrary to the agreement between the parties. It also prevents unjust enrichment of the claimant. *Allegheny Ludlum, Inc.,* 595 A.2d at 684.

Therefore, underlying both of these statutes is a policy that serves to prevent a claimant from receiving a double recovery at the expense of an employer. Each statute effectuates that policy with regard to a different type of double recovery. Subrogation prevents the employer from having to provide compensation for an injury when the responsible third party is also providing the required compensation. The pension offset prevents the employer from having to provide both payments in lieu of compensation and also workers' compensation payments for the same injury. Thus, the provisions are not duplicative. Allowing Employer to take both an offset for pension payments and subrogation prevents two different types of double recovery. Claimant does not argue that subrogation, which prevents Claimant

manent disability solely due to an injury or injuries incurred during the course of a city Employee's employment." (N.T. at 15.)

9. Section 319 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 671.

10. Section 204 of the Act, 77 P.S. § 71.

from receiving both tort compensation and workers' compensation for the same injury, is inappropriate here. However, were we to preclude the pension offset merely because subrogation is appropriate, we would be permitting Claimant to receive *for the same injury, both* Employer-funded payments in lieu of compensation (from the pension) *and* workers' compensation benefits. That is not consistent with the Act.

In her second issue, Claimant contends that certain medical bills were paid twice by Employer. Employer was subrogated for these payments; consequently, Claimant has a direct interest in this issue. At the hearing, Lisa Matrisian, the Subrogation Specialist for CompServices, indicated that she could not be sure if duplicate payments were made and offered to pull the original bills, which she apparently did not have with her at the hearing. It appears that the parties never followed up on this and the WCJ did not address this issue in his adjudication. We must agree with the Board that Claimant, just by raising the *possibility* of duplicate payments, did not meet her burden of proving that they were paid twice.

Therefore, because we conclude that Employer was entitled to both the subrogation lien and the pension offset, and further conclude that Claimant failed to meet her burden to show that any duplicate payments for which Employer was subrogated were made to medical providers, we affirm the order of the Board.

### ORDER

**NOW,** March 29, 2005, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.