MONESSEN, INC., Petitioner

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (FLEMING),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 2005.

Decided May 27, 2005.

Todd K. Foster, Pittsburgh, for petitioner.

Daniel K. Bricmont, Pittsburgh, for respondent.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this appeal, we are asked whether the Workers' Compensation Appeal Board (Board) exceeded its authority in reducing the rate by which an employer may recover its subrogation lien based on a claimant's asserted financial hardship. Concluding it did, we reverse.

In October 1995, James Fleming (Decedent) filed a claim petition against Monessen, Inc. (Employer) and its insurance carrier, the State Workers' Insurance Fund, alleging he developed lung cancer and asbestosis as a result of exposure to asbestos and coke gas while working for Employer. One year later, Decedent's wife, Donna Fleming (Claimant), filed a fatal claim petition alleging Decedent died as a result of lung cancer related to his employment.

A Workers' Compensation Judge (WCJ) granted both petitions, concluding Decedent developed a work-related occupational disease while working for Employer, and a direct causal connection existed between Decedent's occupational disease and his death.

Thereafter, the case was remanded for the WCJ to consider whether Employer was entitled to a credit for any third-party settlements Claimant received. The parties were permitted to submit additional evidence relevant to the credit issue on remand.

On remand, the WCJ conducted four hearings. Notably, Claimant submitted no evidence concerning the impact of the manner of repayment on her financial situation.

The WCJ determined Claimant recovered a net total of $65,656.02 from third-

party settlements with several defendants. The WCJ further determined Employer paid Claimant $120,190.00 in compensation benefits. As a result, the WCJ concluded Employer was entitled to suspend benefits during a "grace period" of 241.38 weeks in order to recover the $65,656.02.[1] Claimant appealed to the Board.

Before the Board, Claimant asserted a complete suspension of her benefits created a financial hardship; as a result, she requested the Board extend the repayment period. The Board agreed. Ultimately, the Board determined a deduction of $80.00 per week from Claimant's benefit checks was a "just and manageable sum." Bd. Op. of 9/14/04 at 6. Thus, it granted Employer a weekly credit of $80.00, thereby extending the repayment period to 494.30 weeks.[2] Despite agreeing Claimant would suffer a financial hardship based on a complete suspension of benefits, the Board cited no evidence in support of its determination. Employer appealed to this Court.[3]

■ On appeal, Employer argues the Board exceeded its authority in reducing the rate by which it may recover its subrogation lien, thereby prolonging its recovery, based on Claimant's asserted financial hardship. It asserts, under Section 319 of

the Workers' Compensation Act[4] (Act), it has an absolute right to immediate payment of the past due lien through a total suspension of benefits until the lien is satisfied. We agree.

The first paragraph of Section 319 of the Act, 77 P.S. § 671, which governs an employer's subrogation rights, provides, as pertinent:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his estate or his dependents, and shall be treated as an advance payment by the employer on account of any future [installments] of compensation.

In *Brubacher Excavating, Inc. v. Workers' Comp. Appeal Bd. (Bridges)*, 575 Pa. 168, 171–72, 835 A.2d 1273, 1275–76 (2003), our Supreme Court reiterated the follow-

---

1. Computations are not at issue and are included for informational purposes: Net total of $65,656.02 ÷ Claimant's weekly compensation rate of $272.00 = 241.38 weeks. In his opinion, the WCJ stated no prorated attorney's fees or costs were payable during the grace period as attorney's fees and costs were excluded in calculating Employer's lien.

2. The Board noted Employer recovered a portion of its lien while the WCJ's suspension order remained in force. The Board modified the WCJ's order, determining Employer was entitled to credit for a suspension from the date of the WCJ's order until the date of its order, a 96–week period. The Board determined Employer recovered $26,112.00 of its lien during that period (96 weeks × $272.00

per week = $26,112.00), and Claimant owed $39,544.02 ($65,656.02—$26,112.00 = $39,544.02). The Board determined Employer was entitled to a credit of $80.00 per week for 494.30 weeks ($39,544.02 ÷ $80.00 per week = 494.30 weeks).

3. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence or whether constitutional rights were violated. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 533 Pa. 461, 626 A.2d 94 (1993).

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671.

ing principles that apply in subrogation cases:

> Subrogation in our workers' compensation system is a significant and firmly established right. Specifically, while subrogation is an important equitable concept that applies whenever a debt or obligation is paid by one party though another is primarily liable, *Smith v. Yellow Cab Co.*, 288 Pa. 85, 135 A. 858, 860 (1927), in the realm of workers' compensation, it has assumed even greater stature. Our Court has stated that the statutory right to subrogation is 'absolute and can be abrogated only by choice.' *Winfree v. Philadelphia Elec. Co.*, 520 Pa. 392, 554 A.2d 485, 487 (1989). This is so because the statute granting subrogation 'clearly and unambiguously' provides that the employer 'shall be subrogated' to the employee's right of recovery. *Id.; see also Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.)*, 566 Pa. 420, 781 A.2d 1146, 1151, 1153 (2001) (Section 319 subrogation is automatic; ad hoc equitable exceptions do not apply to Section 319). Thus, the importance and strength of subrogation in our system of workers' compensation cannot be understated.

█ The rationale underlying the right to subrogation is threefold. *Murphy v. Workers' Comp. Appeal Bd. (City of Phila.)*, 871 A.2d 312 (Pa.Cmwlth.2005). First, it prevents double recovery for the same injury by a claimant. *Id.* Second, it prevents the employer from making compensation payments that resulted from a third party's negligence. *Id.* Finally, it prevents a third party from escaping liability for its negligence. *Id.*

█ In *Mrkich v. Workers' Comp. Appeal Bd. (Allegheny County Children & Youth Servs.)*, 801 A.2d 668 (Pa.Cmwlth. 2002), we explained the proper method used to calculate payments pursuant to an employer's subrogation interest:

> It is now well settled that the 'gross method' is the accepted means of calculating payments pursuant to employer's subrogation interest.... Under the gross method, after deducting the attorney's fees and expenses of litigation ... employer's lien is satisfied by payment of the lien amount minus the proportionate share of costs attributable to the lien. Whatever remains of the recovery fund is paid to claimant. For purposes of gross method computation, employer is considered to have been paid, in satisfaction of its lien, both the cash it actually received and the proportionate share of costs it constructively paid. Similarly, claimant is considered to have been paid both the cash actually received and the share of costs attributable to that payment. This total amount attributed to claimant is known as the 'balance of recovery.' If, by the time the tort recovery is obtained the claimant is no longer disabled, each side will have obtained what it is due and will have paid its proportionate share of costs. *Where claimant has not fully recovered, however, the employer retains a contingent subrogation interest in the balance of recovery paid to claimant, and receives a credit in this amount toward future compensation benefits to the extent they become payable. Employer is excused from paying future benefits until this credit is exhausted.*
>
> This period of time, measured in weeks, is computed by dividing the credit by the weekly compensation benefit amount. The result is known as the 'grace period.' ...

*Id.* at 674–75 (citations and footnote omitted) (emphasis added). During the "grace period," an employer is entitled to a complete suspension of benefits until its lien is

satisfied. *Mrkich; Miller v. Workmen's Comp. Appeal Bd. (Giant Food Stores, Inc.)*, 715 A.2d 564 (Pa.Cmwlth.1998). *See also Stalmaster v. Workmen's Comp. Appeal Bd. (SEPTA)*, 679 A.2d 293 (Pa. Cmwlth.1996) (during grace period compensation owed by employer is satisfied by third party recovery).

■ Both this Court and our Supreme Court repeatedly hold an employer has an absolute right to *immediate payment* of its past-due lien from the recovery fund after payment of attorneys' fees and litigation costs. *Thompson; Rollins Outdoor Adver. v. Workmen's Comp. Appeal Bd.*, 506 Pa. 592, 487 A.2d 794 (1985); *Reeder v. Workers' Comp. Appeal Bd. (Mercer Lime & Stone Co.)*, 871 A.2d 337 (Pa.Cmwlth. 2005); *Mrkich; Budd Co. v. Workers' Comp. Appeal Bd. (Settembrini)*, 798 A.2d 866 (Pa.Cmwlth.2002).

■ Different options are available to permit satisfaction of the past lien as expeditiously as possible. Thus, a WCJ has discretion to order a claimant to make an out-of-pocket lump sum payment or to modify a claimant's compensation award to reflect a third-party settlement. *PMA Ins. Group v. Workmen's Comp. Appeal Bd. (Kelley)*, 665 A.2d 538 (Pa.Cmwlth. 1995) (citing *Ward v. Workmen's Comp. Appeal Bd. (Sun Refining and Marketing Co.)*, 143 Pa.Cmwlth.319, 599 A.2d 1013 (1991)); *Cox v. Workmen's Comp. Appeal Bd. (Otis Elevator)*, 150 Pa.Cmwlth.205, 615 A.2d 878 (1992). Also, where there is no cash from the third party settlement to satisfy the past subrogation lien by a lump sum payment, a WCJ may grant a grace period at the full compensation rate. *Cox; Wheeling–Pittsburgh Steel Corp. v. Workmen's Comp. Appeal Bd. (McFadden)*, 138 Pa.Cmwlth.204, 587 A.2d 852 (1991). However, there is no applicable authority for the proposition that the Board has discretion to prolong repayment of a subrogation lien.

Here, we disagree with the Board's decision to reduce the rate by which Employer may recover its subrogation lien for several reasons. First and foremost, in extending the recovery period, the Board overlooked the consistent line of cases that interpret Section 319 as conferring on Employer an absolute right to *immediate payment* of its past due lien.

Second, the Board exceeded its authority in making a factual finding that a total suspension of benefits would create undue hardship for Claimant. *See Moore v. Workmen's Comp. Appeal Bd. (Reading Paperboard Corp.)*, 539 Pa. 333, 652 A.2d 802 (1995) (where Board takes no additional evidence, WCJ is ultimate fact-finder). Before the WCJ on remand, Claimant submitted no evidence concerning her current financial situation. As a result, the WCJ made no finding that a suspension of compensation payments would create a hardship.[5]

Third, in altering the rate by which Employer may recover its lien, the Board assumed discretion over the parties' right to negotiate and compromise the lien. *See, e.g., Baus v. Workmen's Comp. Appeal Bd. (Nelson Co.)*, 137 Pa.Cmwlth.121, 585 A.2d 573 (1991) (by proper agreement

---

**5.** The only mention of Claimant's financial situation is in the WCJ's 1998 opinion granting the claim and fatal claim petitions. There, the WCJ found Claimant was employed by Denny's for 13 years, but took a leave of absence when Decedent became ill. He further found Claimant earned approximately $10,000.00 in 1996. In addition, he found Claimant and Decedent were unable to live on Claimant's income alone, and they used Decedent's social security benefits and income to meet their daily expenses. WCJ Op. of 11/03/1998, Finding of Fact No. 17. While this finding addresses Claimant's financial situation in 1996, it does not explain Claimant's current financial situation.

employer can settle its claim for a past lien for a lesser amount out of the recovery, and the claimant in such case is entitled to benefit of that bargain). The Board here substituted its discretion for that usually reserved to the parties.

Finally, by extending the repayment period by approximately six years, the Board increased the risk Employer will not recover its entire lien. More specifically, Claimant is 54 years of age. The possibility Claimant could pass away within the extended recovery period increases the risk Employer will not recover its entire past due lien. We do not believe this risk may be involuntarily imposed on Employer without statutory authority.

The Board's reliance on *Fahringer, McCarty & Grey, Inc. v. Workers' Comp. Appeal Bd. (Green)*, 107 Pa.Cmwlth.597, 529 A.2d 56 (1987) (*en banc*) was in error. There, the claimant received an overpayment of benefits for six years as a result of a miscalculation of his average weekly wage. The employer subsequently filed a petition to recoup erroneously paid benefits directly from the claimant. In refusing the employer's request, the WCJ made a specific finding that recoupment "would be detrimental to the claimant." *Id.* at 57. The Board affirmed, noting, among other things, the claimant's benefits were his family's sole source of income. This Court reversed, holding the employer could recoup the overpayment directly from the

claimant to prevent an unjust enrichment. Sympathizing with the claimant's financial difficulties in making restitution, however, we directed the Board order a reasonable sum deducted from the claimant's future benefit checks.

*Fahringer* is not controlling as it did not concern an employer's statutory right to subrogation under Section 319, which confers on an employer an absolute right to immediate repayment. In addition, unlike in *Fahringer* where the WCJ made a specific finding that recoupment would be detrimental to the claimant, here the factfinder made no such finding.

Although we acknowledge the Board's compassion, we are constrained to reverse as the Board exceeded its authority by prolonging Employer's recovery of its statutory lien.[6]

President Judge COLINS dissents.

### ORDER

AND NOW, this 27th day of May, 2005, the order of the Workers' Compensation Appeal Board is **REVERSED.**

---

**6.** Contrary to Claimant's assertion, we need not consider the Act's humanitarian purpose in reaching our determination. Section 319 clearly states an employer "shall be subrogated" to the employee's right of recovery. As noted, our Supreme Court interprets the statutory language as conferring on an employer an absolute right to immediate payment. *Rollins Outdoor Adver.* Therefore, consideration of the Act's humanitarian propose is unnecessary here.