**Marvin RISIUS, Petitioner**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (PENN STATE UNIVERSITY), Respondent.**

**Barbara Pennypacker, Petitioner**

**v.**

**Workers' Compensation Appeal Board (Penn State University), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 6, 2007.

Decided April 18, 2007.

Alvin F. de Levie, Philadelphia, for petitioners.

Christopher P. Gerber, Chester Springs, for respondent.

BEFORE: COLINS, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Claimants, Marvin Risius (Risius) and Barbara Pennypacker (Pennypacker) appeal from orders of the Workers' Compensation Appeal Board (Board) which affirmed the decisions of a Workers' Compensation Judge (WCJ) granting the petitions to review filed by Safety Na-

tional Casualty Company (Safety) and awarding Safety a subrogation interest in Claimants' third party tort settlement. We affirm.

On October 12, 1999, Pennypacker sustained injuries in the course of her employment with Pennsylvania State University (Employer), when her vehicle was struck by a train. A notice of compensation payable (NCP) was issued on February 15, 2002. Employer, who was self-insured, commenced payment of benefits. Risius also sustained work-related injuries on October 12, 1999, in the same motor vehicle accident. Employer issued an NCP on November 8, 1999, and commenced payment of benefits.

On September 26, 2000, Employer entered into a Self–Insurance Loss Portfolio Transfer Assumption Agreement (Agreement) with Safety, whereby Safety assumed liability for Employer's workers' compensation claims, which included those filed by Claimants. Safety is a company authorized to write workers' compensation insurance in the Commonwealth. In a letter dated October 10, 2000, the Pennsylvania Department of Labor & Industry's Bureau of Workers' Compensation reviewed and approved the Agreement. Pursuant to the Agreement, Safety became responsible for Claimants' medical benefits.

Thereafter, Claimants filed a third party lawsuit against Norfolk Southern Corporation (Norfolk) alleging that Norfolk was responsible for their October 12, 1999, injuries. The parties to the suit agreed to settle all claims for the sum of $243,000.00. Claimants' counsel will receive a one-third contingency fee plus costs.

On June 13, 2003, Safety, as the successor in interest to Employer by virtue of the Agreement, filed separate review petitions requesting subrogation of its payments to Claimants under the Workers' Compensation Act (Act) as a result of the

third party settlement.[1] In separate decisions dated June 13, 2003, the WCJ granted the petitions.

With respect to Risius, the WCJ found Safety met its burden of proving it had a subrogation interest in the amount of $26,306.58. As to Pennypacker, the WCJ determined that Safety met its burden of proving that it had a subrogation interest in the amount of $96,342.70. Further, the WCJ concluded that Pennypacker failed to prove that medical treatment paid for by Eastern Alliance or PMA was treatment entirely unrelated to her October 12, 1999, work injury. Both parties appealed to the Board, which affirmed the WCJ's decisions and these appeals followed.[2]

The initial argument that we address is whether an employer can transfer its liability and subrogation rights to a third party. Claimant alleges that the Act only provides that subrogation rights may be claimed by a self-insured or insurance carrier which has paid benefits under the Act. Here, Claimants allege that Safety never made payments to Claimants and as such, it is not entitled to subrogation.

We first observe that contrary to Claimants' contention, the WCJ found that Safety did make payments to Claimants. Specifically, in addition to those payments made by Employer, the WCJ found that as to Pennypacker, the third party administrator for Safety paid her $83,918.93. (Pennypacker decision, WCJ's F.F. No. 10.) As to Risius, the WCJ found that Safety's third party administrator paid him $25,994.62. (Risius decision, WCJ's F.F. No. 10.)

In considering whether there is statutory or regulatory authority for the transfer or sale of subrogation rights, we observe that Section 319 of the Act, 77 P.S. § 671 states:

> [w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe . . . against such third party to the extent of compensation payable under this article by the employer. . . .

Moreover, 34 Pa.Code § 125.15 provides in pertinent part:

> (a). . . . Liability may be transferred to a company authorized to write workers' compensation insurance in this Commonwealth if the employer gives written notice to the Bureau within 10 days of the transfer.
>
> (b) A self-insurer which liquidates or dissolves shall transfer its liability to a third party, subject to the approval of the Bureau or shall assume its liability with a company authorized to write workers' compensation insurance in this Commonwealth.

While we agree with Claimants that the Act does not expressly authorize the sale and or transfer of subrogation rights, we also observe that neither the Act nor the regulations prohibit the sale and transfer of a subrogation interest. Given that 34 Pa.Code § 125.15(a) provides that an employer may transfer liability to a workers' compensation carrier, as was done here, it necessarily follows that the right of subrogation also transfers. Such is consistent with one of the underlying purposes of Section 319, which is to prevent an employee from receiving a double

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4—2501–2626.

2. Our review is limited to determining whether constitutional rights were violated, an error of law committed and whether necessary findings are supported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle),* 703 A.2d 558 (Pa.Cmwlth.1997).

recovery for the same injury. *Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980). We further observe that, as stated in *Brown v. Travelers Insurance Company*, 434 Pa. 507, 254 A.2d 27 (1969), although Section 319 of the Act does not include the term insurance carrier, if an employer has an insurance carrier, such carrier would have subrogation rights.[3]

Next, Claimants argue that the WCJ erred in relying on insufficient medical and insurance records. Specifically, Claimants argue that Safety failed to present any medical testimony to establish that the treatment for which it claimed subrogation, was proximately caused by the work-related accident and, as such, Safety failed to sustain its burden of proof.

As to Pennypacker, Claimants note that the only injuries described in the NCP were strains and sprains of the head, T5–6 and right shoulder. As to Risius, the NCP identified his injuries as fractured ribs, clavicle and preumothorax. With respect to Pennypacker, Claimants note that subsequent to her work injury, she fell on at least two occasions which resulted in head injuries, requiring stitches for facial lacerations. Despite these subsequent head injuries, Safety never presented any medical evidence or testimony distinguishing the nature and extent of those injuries vis-à-vis the injuries for which it sought subrogation. Moreover, Claimants argue that medical forms submitted to the WCJ with respect to care received by Pennypacker at Centre Psychology, show that the doctors who treated her left unmarked those boxes which indicate whether the treatment they provided was employment and/or accident related.

■ We initially observe that with respect to Section 319 of the Act, subrogation rights are absolute and an employer is subrogated to the extent of compensation paid. *Thompson v. Workers' Compensation Appeal Board (USF&G)*, 566 Pa. 420, 781 A.2d 1146 (2001). In this case, Safety presented evidence of compensation paid. Specifically, Safety presented the testimony of John Huzvar III, Senior Claims Manager for Eastern Alliance Insurance Company, Safety's third party administrator, who reviewed payments made on Claimants' behalf by both Eastern Alliance and PMA, the previous third party administrator when Employer was self-insured. As to Pennypacker, Huzvar testified that PMA paid $14,133.99 in medical bills and Eastern Alliance paid $83,918.93.[4] With respect to Risius, Huzvar testified that PMA paid $25,994.62 in medical bills and Eastern Alliance paid $351.96. In addition, the WCJ also found that Safety submitted invoices of charges submitted to it on approved forms along with various medical reports and printout sheets indicating all of the medical payments made on Claimants' behalf.

Although Pennypacker presented evidence that she experienced falls subsequent to her work injury which necessitated medical treatment, the WCJ concluded that the treatment she received stemmed from the October 12, 1999 injury. (Pennypacker decision, WCJ's Conclusions of Law No. 2.) That Pennypacker was required to prove that Safety was not entitled to subrogation with respect to certain medical expenses is consistent with the

---

3. Claimants further argue that there was no evidence presented that Safety paid valuable consideration to Employer in order to purchase the subrogation rights. Claimants, however, do not cite to any authority requiring that valuable consideration be paid and in addition, if such is required, Claimants do not allege what would constitute valuable consideration.

4. Safety later acknowledged that two charges of $986.24 and $703.98 were not related to Pennypacker's work injury.

WCJ's determination and this court's decision in *Murphy v. Workers' Compensation Appeal Board (City of Philadelphia)*, 871 A.2d 312 (Pa.Cmwlth.2005).

In *Murphy*, the employer filed a review petition seeking subrogation for medical payments made to providers. At the WCJ's hearing, the claimant alleged that some bills had been paid twice by the employer. The subrogation specialist testified on cross-examination that she could not be sure if duplicate payments were made and offered to look into the matter. This court noted that it appeared as if the parties never followed up on the issue and, in fact the WCJ did not address the issue in his adjudication. This court stated that by merely raising the possibility of duplicate payments, the claimant did not meet her burden of proving that they were paid twice.

■ Safety stands in the shoes of Employer and the previous third party administrators who paid compensation to Claimants as a result of claims submitted by Claimants that they were entitled to the funds. Claimants now claim the amounts they requested and were paid in good faith by Employer or its representatives were not related to the work injury. With such a change of position, it is now only fitting, as to this subrogation issue, that Claimants bear the burden of proving that the claims it previously claimed were work related should not have been paid by Employer or its representatives.

Here, although Pennypacker alleged that a portion of medical treatment that she received was not related to her work-related accident, the WCJ concluded that the medical treatment she received stemmed from her October 12, 1999 work-related injury. As such, like the claimant in *Murphy*, Pennypacker failed to meet her burden of proof.[5]

Finally, Claimants argue that Safety did not enter into evidence, during its case in chief, any medical or insurance records which it relied upon for its claim of subrogation and only submitted the records at the insistence of the WCJ after the record was closed.

We agree with Safety, however, that the WCJ acted properly in accordance with Section 420 of the Act, 77 P.S. § 831, which provides:

[A] workers' compensation judge, if ... he deem[s] it necessary, may, of its or his own motion, either before, during, or after any hearing, make or cause to be made an investigation of the facts set forth in the petition or answer or facts pertinent in any injury under this act.

In accordance with the above, because the WCJ properly awarded Safety an interest in Claimants' third party tort settlement, the decision of the Board is affirmed.

### ORDER

Now, April 18, 2007, the order of the Workers' Compensation Appeal Board, in the above-captioned matter, is affirmed.

**5.** Claimants' reliance on *Maitland Brothers, Co. v. Workmen's Compensation Appeal Board (Moser)*, 92 Pa.Cmwlth.421, 499 A.2d 713, 715 (1985), does not warrant a different result. In that case, this court stated that "Section 319 does not permit reduction in compensation liability for the compensable injury because of some recovery that takes place after such injury is incurred, particularly if such subsequent injury is not 'in whole or in part' a contributing factor in the original 'compensable injury.'" Here, there was no third party recovery with respect to subsequent injuries suffered by Pennypacker after her October 12, 1999 injury. Moreover, in this case, the WCJ specifically concluded that the medical treatment received by Pennypacker was a result of the injuries occasioned on October 12, 1999.