# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Anna Griffis, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 613 C.D. 2022 |
| | : | Submitted: April 28, 2023 |
| Albert Einstein Healthcare Network | : | |
| (Workers' Compensation Appeal | : | |
| Board), | : | |
| Respondent | : | |

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, President Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER          FILED: March 15, 2024**

Anna Griffis (Claimant) petitions for review of a May 24, 2022 Order of the Workers' Compensation Appeal Board (Board) that affirmed, as modified, a decision by a Workers' Compensation Judge (WCJ) denying Claimant's Penalty Petition. Claimant filed the Penalty Petition against Albert Einstein Healthcare Network (Employer), asserting Employer did not begin paying its share of the costs associated with a third-party recovery after recovering an accrued lien and failed to pay specific loss benefits. The WCJ concluded Claimant had not paid the accrued lien immediately and therefore Employer was entitled to recover the accrued lien by withholding $332.20 per week over the course of 545.99 weeks. Upon appeal, the Board concluded the WCJ transposed numbers in the amount of the accrued lien, resulting in a miscalculation of the period of suspension, and therefore modified the recovery period to 356.35 weeks, but otherwise affirmed the WCJ's decision.

Before this Court, Claimant asserts the WCJ erred in calculating the reimbursement of Employer's net subrogation lien using pro rata attorney's fees and costs rather than the full indemnity[1] benefits. For the reasons that follow, we affirm.

## I.    BACKGROUND

With respect to the issue presently before the Court, the WCJ found the following facts:[2]

1. . . . Claimant[] was injured in the course of her employment on April 28, 2009[,] while employed by . . . Employer. Her injuries were severe. She continues to be entitled to compensation for total disability.

2. Four years after the injury, [] Claimant settled a medical malpractice case in the total amount of $2.088 million . . . .

3. [] Claimant then refused to reimburse [] [Employer's] already[-] substantial subrogation lien[,[3]] electing instead to challenge [] [Employer's] right to subrogation. The [WCJ's] Order of August [1], 2017[4] confirmed [] [E]mployer's right to subrogation, but [] Claimant continued to refuse to reimburse the lien.

4. As a result of [] Claimant's failure to reimburse the lien, [] Employer[,] as of October 3, 2017[,] stopped paying wage loss

---

[1] Wage-loss benefits, indemnity benefits, and disability benefits are synonymous in workers' compensation. *See, e.g.*, *CPV Mfg., Inc. v. Workers' Comp. Appeal Bd. (McGovern)*, 805 A.2d 653, 658 (Pa. Cmwlth. 2002).

[2] Claimant represents in her brief that "[t]he facts of this case are not in dispute, only the calculation of [] Employer's reimbursement of the net subrogation lien." (Claimant's Brief (Br.) at 8.) We explained in great detail the factual and procedural history of this case in *Griffis v. Workers' Compensation Appeal Board (Albert Einstein Healthcare Network)* (Pa. Cmwlth., Nos. 273 and 280 C.D. 2019, filed July 15, 2020) (*Griffis I*).

[3] The subrogation lien represents the amount Claimant owes Employer from the time of her recovery of the third-party settlement until Employer learned of the settlement and ceased paying indemnity benefits, as the receipt of the third-party settlement on the part of Claimant represented a prepayment of future indemnity benefits. *Griffis I*, slip op. at 30-31.

[4] The WCJ appears to have accidentally referred to the Order as being dated August 3; the relevant Order is dated August 1.

compensation benefits[,[5]] as it was [] Employer's only means of recouping the substantial lien.

5. Consequently, Claimant filed a Penalty Petition on November 3, 2017[,] alleging that [] Employer violated the [Workers' Compensation] Act [(Act[)[6]] by failing to pay its *pro rata* share of [Claimant's] fees and expenses.

6. The May 10, 2018 [WCJ] Decision [] ordered [] Claimant to reimburse [] Employer for its lien and found that [] Employer was entitled to a full suspension of [] Claimant's benefits until the lien was reimbursed.

7. [The May 10, 2018] Order [of the WCJ] was ultimately affirmed as modified by the [Board] and then on July 15, 2020[,] by the Commonwealth Court.[7]

8. [] Claimant has failed to offer any evidence or rational theory in support of the position that the lien has been reimbursed by [] Claimant.

9. Despite the very significant third-party recovery, [] [Employer's] lien is not even close to being reimbursed. Because [] Claimant has failed to reimburse, [] Employer can recoup the amount due only by withholding the amount that would otherwise be due on a weekly basis.

10. [] Claimant has failed to prove a violation of the Act.

---

[5] Where an employer is subrogated to a workers' compensation claimant's rights in a third-party tort settlement, the claimant is entitled to pro rata reimbursement of the fees and costs associated with procuring that settlement in the first instance. 21A SUMM. PA. JUR. 2d, EMPLOYMENT & LAB. RELS § 18:39 (2d ed.). Thus, in a scenario where the claimant pays the full subrogation lien up front, during the grace period in which the employer need not pay compensation because that compensation has essentially been "prepaid" by the remaining balance of recovery Claimant has in the settlement, the employer must still pay pro rata costs and fees. *Id.* This avoids the potential for unjust enrichment because the claimant has created a fund for the benefit of the employer at the claimant's expense. *Id.* at § 18:41.

[6] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[7] In *Griffis I*, this Court, while acknowledging it was a violation of the Act for Employer to unilaterally cease payment, affirmed the Board's affirmance of the WCJ, who declined to impose penalties. "Because there was no error in suspending Claimant's benefits until she repays Employer as set forth above, the WCJ did not abuse his discretion in declining to impose penalties despite finding a violation of the [] Act." *Id.*, slip op. at 34.

(WCJ Decision, 11/10/2021, Findings of Fact (FOF) ¶¶ 1-10.)[8]

To summarize, the relevant facts are that Claimant was injured during the course and scope of employment and received, *inter alia*, indemnity benefits from Employer. She later received a large settlement in her medical malpractice action against the doctors who treated her for the work injury. Employer established subrogation rights in the award, which resulted in: (i) Claimant owing a lump sum subrogation lien to Employer for past double payment of benefits, which she has refused to pay, and (ii) the remaining settlement funds (i.e., balance of recovery), deemed "prepayment" of indemnity benefits under the Act, serving as a credit Employer is entitled to take against payment of future indemnity benefits (i.e., creating a "grace period"). During the grace period, Employer was to pay Claimant its pro rata share of the costs and fees associated with recovering the medical malpractice settlement. Employer has not paid any pro rata costs and fees to Claimant since October 2017.

The WCJ reasoned that Employer's "only way to get reimbursed is to stop paying compensation due until the debt has been recovered" given Claimant's choice not to immediately reimburse the existing lien. (*Id.* at 5.) The WCJ explained that if Claimant had immediately reimbursed the lien, Employer would have been obligated to pay fees and costs associated with the medical malpractice recovery of $332.20 per week, representing Employer's share of the fees and costs of obtaining the third-party settlement. However, because Employer can now only recover on the lien by withholding that $332.20, it may do so in a "grace period," which is calculated by dividing the entirety of the lien, which the WCJ calculated to be $181,380.97, by the weekly amount due, $332.20, which leads to a grace period for Employer of 545.99 weeks in which Employer is relieved of paying those pro rata

[8] Certified Record (C.R.) Item 5.

4

fees and costs. (*Id.*) The WCJ also reasoned Claimant was not entitled to the payment of specific loss benefits, given Claimant's outstanding obligation to repay the subrogation lien, as well as her continuing disability. (*Id.*, Conclusion of Law (COL) ¶ 3.)

The Board affirmed the WCJ with a modification. First, the Board noted that the WCJ had erroneously transposed a digit, resulting in the lien amount as $1**81**,380.97, instead of the correct amount of $1**18**,380.97. Recalculating the time until the lien would be repaid in full, it found that to recoup the lien, Employer was entitled to 356.35 weeks, not 545.99 weeks. (Board Op. at 4-5.)[9]

Next, the Board rejected the contention that *Monessen, Inc. v. Workers' Compensation Appeal Board (Fleming)*, 875 A.2d 415, 419 (Pa. Cmwlth. 2005), supported Claimant's position. It agreed with the WCJ that Employer could retain the $332.20 it would otherwise be required to pay Claimant because she did not pay the lump sum out of her third-party recovery. Accordingly, it reasoned the WCJ did not err in refusing to grant the Penalty Petition. (Board Op. at 5.) Further, rejecting Claimant's contention that because the lien had been satisfied, specific loss benefits were now payable, the Board explained, "Claimant's eligibility for indemnity benefits for total disability benefits has not ended." (Board Op. at 6.) It continued: "She is not receiving weekly payments of indemnity benefits because the balance of recovery has not been exhausted. The specific loss benefits are therefore not yet payable." (*Id.*) It affirmed the WCJ's Order, but modified it to fix the scrivener's error in the WCJ's calculation. Claimant timely petitioned for review to this Court.

---

[9] C.R. Item 8.

## II. PARTIES' ARGUMENTS

Claimant argues that the WCJ erred as a matter of law in calculating the net reimbursement of the subrogation lien by using pro rata attorney's fees and costs as opposed to full indemnity. Claimant points to the language in a previous memorandum opinion, in which we stated that "[o]nce there is full reimbursement, Employer is able to take a credit against Claimant's ongoing indemnity benefits, minus the pro rata share, until Claimant's third-party recovery is exhausted." *Griffis v. Workers' Comp. Appeal Bd. (Albert Einstein Healthcare Network)* (Pa. Cmwlth., Nos. 273 and 280 C.D. 2019, filed July 15, 2020) (*Griffis I*), slip op. at 31-32. In her view, Employer's credit was exhausted on June 23, 2020; accordingly, the return of pro rata attorney's fees and costs should have begun then. Claimant arrives at the June 2020, date by dividing $118,380.97 by her weekly indemnity benefits compensation rate of $836, which results in 141.6 weeks of "grace period" for Employer to recoup the lien. One hundred forty-one point six weeks after October 3, 2017, is approximately June 23, 2020. (Claimant's Br. at 15.) Claimant cites to *Monessen* for the proposition that "where there is no cash from the third[-]party settlement to satisfy the past subrogation lien by a lump sum payment, a WCJ may grant a grace period **at the full compensation rate**." (Claimant's Brief (Br.) at 14) (citing *Monessen*, 875 A.2d at 419) (emphasis added in brief). A full reimbursement having been made, Claimant asserts, notwithstanding a credit due, an employer must still pay pro rata fees and costs.

Employer asserts that because Claimant has refused to repay the lien, Employer has a right to suspend payment of the weekly reimbursement payments of

6

$322.20[10] for a total period 367.4 week or 7.1 years.[11] Employer emphasizes that it is inaccurate for Claimant to suggest the weekly disability benefit rate should be used to calculate the lien's repayment, which is an entirely separate matter. Employer explains that, typically, employers are entitled to the immediate repayment of their lien, less their pro rata share of costs incurred in securing the settlement, and that the resulting "grace period" in which employers need not pay compensation derives from the fact that compensation is deemed prepaid as a result of the settlement, and that during the grace period, the employee receives pro rata civil litigation cost reimbursement, and **not** disability benefit payments. According to Employer, it is not that Claimant's disability benefits have been suspended, but rather, Employer is within the grace period with respect to those benefits; it will not be until the $1,647,422.02 balance of recovery[12] is exhausted that Employer will have to begin repayment; that grace period in this case is nearly 38 years.[13] Employer

---

[10] It appears Employer has transposed a number in its brief, as the record shows the weekly pro rata costs and fees are $332.20 per week, not $322.20 per week. (WCJ Decision at 5; 12-23-2020 Hearing Transcript, C.R. Item 10 at 14 (Employer's counsel explaining that $332 is the weekly pro rata costs and fees amount due before the WCJ).)

[11] Employer reaches this figure by dividing the $118,380.97 lien by the $3**2**2.20 per week of litigation costs that would be payable to Claimant. (Employer's Br. at 29-30.) As discussed above, the correct calculation would involve the $3**3**2.20 figure as denominator; which the Board used, and this Court uses, in our analysis below.

[12] The Board noted in its February 13, 2019 Opinion and Order, which we affirmed, that the balance of recovery, taking into account the correctly calculated subrogation lien, was $1,891,560.80. (C.R. Item 21 at 10 n.9.) In its brief, Employer says that this figure derives from the parties' third-party settlement agreement. (Employer's Br. at 28.) Employer's approximately $1.6 million figure does not appear in the Certified Record. However, the precise amount of the balance of recovery is not relevant to the immediate question before the Court, whether the WCJ erred in calculating the number of weeks necessary for the subrogation lien to be considered paid in full.

[13] Employer reaches this figure by dividing $1,647,422.02, by Claimant's total weekly disability rate of $836.00, which results in 1,970.6 weeks, or 37.89 years. (Employer's Br. at 28.)

7

posits the "suspension" has **only** to do with the litigation costs Employer would have been required to pay.

Employer further argues that *Monessen* is inapposite, noting that there, the subrogation lien figure was much larger than the claimant's third-party civil recovery. According to Employer, this Court "did not address in *Monessen* the situation presented in this case – where [] Claimant's civil recovery establishes a substantial [b]alance of [r]ecovery, but [C]laimant refuses to honor her obligation to provide immediate net subrogation reimbursement." (Employer's Br. at 32-33.) Employer cites to *Mrkich v. Workers' Compensation Appeal Board (Allegheny County Children & Youth Services)*, 801 A.2d 668, 674-75 (Pa. Cmwlth. 2002), for the proposition that in a case such as this, where a claimant has not physically recovered from her injury but has a balance of recovery from the third-party settlement that exceeds her lien, "the employer retains a contingent subrogation interest in the balance of recovery paid to [the] claimant[] and receives a credit in this amount towards future compensation benefits to the extent they become payable. Employer is excused from paying future benefits until this credit is exhausted." (Employer's Br. at 34 (quoting *Mrkich*, 801 A.2d at 674).)

Employer further asserts that Claimant misapprehends the nature of the benefits she is due. It explains that under Section 306(c) of the Act, she is entitled to a **disability** benefit.[14] *See* Section 306(c) of the Act, 77 P.S. § 513. Section 306(c)(22) provides for specific loss benefits, which fall within the general category of disability benefits. Employer reiterates that all disability benefits are in their grace period and suspended until the approximately $1.6 million settlement is depleted. In support, Employer cites *Kinzler v. Workers' Compensation Appeal Board*

---

[14] Section 306(c) refers to "all disability resulting from permanent injuries . . . ." Section 306(c) of the Act, 77 P.S. § 513.

*(Association for Vascular Access)*, 245 A.3d 389 (Pa. Cmwlth. 2021) (adopting the view that specific loss benefits are subject to subrogation in the same manner as total disability benefits).

## III. DISCUSSION

Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704, limits our review in workers' compensation matters to determining whether the WCJ violated constitutional rights, failed to act in accordance with law, or made findings unsupported by substantial evidence. *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328, 331 n.2 (Pa. 2000). A WCJ's grant or denial of a penalty petition falls within the rubric of errors of law; we have explained that

> Section 435(d) of the Act authorizes the assessment of penalties against an employer [that] violates the Act or the Bureau [of Workers' Compensation]'s regulations. 77 P.S. § 991(d).[15] Claimants seeking the imposition of a penalty bear the initial burden of proving that a violation of the Act or the regulations has occurred. . . . If the claimant meets this initial burden, "the burden then shifts to the employer to prove it ha[s] not" violated the Act. . . . Even if a violation of the Act or the regulations is established, the imposition of a penalty is not mandatory but falls within the discretion of the fact finder. . . . Accordingly, this Court will not overturn a penalty [decision] on appeal **absent an abuse of discretion**, which is not merely an error of judgment, but among other reasons, occurs where the law is misapplied in reaching a conclusion.

*Bennett v. Jeld-Wen, Inc. (Workers' Comp. Appeal Bd.)*, 306 A.3d 949, 958-59 (Pa. Cmwlth. 2023) (internal citations and quotation marks omitted) (emphasis added).

Therefore, the threshold question is whether Claimant has met her burden of showing that Employer violated the Act. In *Griffis I*, we concluded that, as of October 2017, when Employer unilaterally stopped paying its pro rata share of costs

---

[15] Section 435 was added by Section 3 of the Act of February 8, 1972, P.L. 25.

9

and fees, even if such unilateral cessation did violate the Act, it did not warrant imposition of penalties because it was justified. *See Griffis I*, slip op. at 34 ("Because there was **no error** in suspending Claimant's benefits . . . the WCJ did not abuse his discretion in declining to impose penalties.") (emphasis added). Indeed, we made clear that **ongoing suspension of benefits** was warranted until the lien is paid.[16] Because this Court, in affirming the Board in *Griffis I*, said that Employer was not violating the Act by continuing to decline to pay pro rata costs and fees, here, the WCJ would only have erred in dismissing the Penalty Petition if, by the time it was filed in November 2020, the situation had fundamentally changed so as to render Employer's continued refusal to pay improper, given this Court's Order in *Griffis I*.

We first address Claimant's contention that it was error for the WCJ not to use her $836 weekly indemnity benefit to calculate the number of weeks necessary to fully repay the subrogation lien, which necessarily requires us to consider Employer's current obligation with respect to Claimant's $836 weekly indemnity benefit and its corresponding grace period.

We explained in *Monessen*:

> Where [a] claimant has not fully [physically] recovered[17] . . . the employer retains a contingent subrogation interest in the balance of recovery paid to [a] claimant, and receives a credit in this amount toward future **compensation benefits** to the extent they become payable. [The e]mployer is **excused from paying future benefits** until this credit is exhausted. This period of time, measured in

---

[16] We explained in *Griffis I*, that Claimant could satisfy the subrogation lien one of two ways: either by paying it in full or "through the suspension of all of Claimant's benefits including her pro rata share . . . until that [subrogation lien] is reimbursed in full." *Id.*, slip op. at 32. We explained that Employer, upon reimbursement of the subrogation lien, would be entitled to continue not to pay any indemnity benefits because it is entitled to a credit against those benefits until the third-party recovery is exhausted. *Id.*

[17] This is the case here, where the WCJ found that Claimant continues to be entitled to full indemnity benefits. (WCJ Decision, 11/10/2021, FOF ¶ 1.)

10

weeks, is computed by dividing the credit by the weekly compensation benefit amount. The result is known as the "grace period."

875 A.2d at 418 (quoting *Mrkich*, 801 A.2d at 675) (emphasis added, original emphasis omitted). To reiterate, Claimant was receiving "a **double payment of indemnity benefits**" from the time of her third-party settlement in 2013 until Employer stopped paying in October 2017. *Griffis I*, slip op. at 31 (emphasis in original). The $118,380.97 subrogation lien Claimant owes Employer represents **past** indemnity benefits Employer never should have had to pay during that time period. *Id.* As of October 2017, Employer entered its grace period with respect to its obligation to pay future **indemnity** benefits from that point; its obligation to resume any indemnity payments will not resume until the entire settlement has been exhausted, as the settlement funds Claimant received are deemed a prepayment of any prospective indemnity benefits. *Id. See also Monessen*, 875 A.2d at 418 (The employer was "excused from paying future [indemnity] benefits until this credit is exhausted.") (emphasis omitted). In other words, Employer's current nonpayment of the indemnity benefits does not "chip away" at Claimant's **subrogation lien debt**, which represents overpaid **past** indemnity benefits, but rather, Employer's nonpayment of indemnity benefits right now "chips away" at the **remainder of Claimant's third-party settlement**. Simply put, as of October 2017, Employer is entitled to a grace period with respect to indemnity benefits until the entire settlement is exhausted. (Board Op. at 6 ("Claimant's eligibility for indemnity benefits . . . has not ended. She is not receiving weekly payments of indemnity benefits because the balance of recovery [i.e., settlement funds] has not been exhausted.").)[18]

---

[18] Further, Claimant's reliance on the following line of *Monessen* is misplaced: "where there is no cash from the third[-]party settlement to satisfy the past subrogation lien by a lump sum **(Footnote continued on next page…)**

11

In sum, Employer's obligation to pay $836 in weekly indemnity benefits is in its grace period. Each week, Employer's deemed "prepayment" of those benefits (i.e., Claimant's balance of recovery), is reduced by $836. That amount does not operate to reduce or pay back the subrogation lien debt. Therefore, we reject Claimant's argument that the WCJ erred in declining to use the $836 weekly indemnity figure as the denominator in calculating the number of weeks to which Employer is entitled as a grace period for recoupment of the subrogation lien.

We next address Claimant's related point that the WCJ erred in dividing the subrogation lien by the pro rata costs and fees figure to determine Employer's grace period with respect to recoupment of the subrogation lien. The pro rata attorney's fees and costs, in contrast to the weekly indemnity benefits, are indeed monies Employer owes Claimant; had Claimant paid the subrogation fee in a lump sum as ordered, Employer would be required to pay her that sum each week. (*See* Board Op. at 5.)[19] Here, it is key that Claimant owes Employer $118,380.97. Therefore, Employer should not have to pay its pro rata fees and costs obligation to Claimant until she has repaid the subrogation lien. In substance, when Employer withholds the pro rata fees and costs each week, it is as if it writes Claimant a check for $332.20, Claimant deposits that amount, then writes a check back to Employer in the amount of $332.20 toward repayment of her debt to Employer. The Board concluded it would take Claimant 356.35 weeks to pay back the subrogation lien.

_____

payment, a WCJ may grant a grace period **at the full compensation rate**." *Monessen*, 875 A.2d at 419 (emphasis added). Here, the record shows that **there is cash** from the third-party settlement to satisfy the subrogation lien; Claimant has not paid the lump sum. Accordingly, that sentence is inapplicable on these facts.

[19] "Claimant is obligated to immediately reimburse Employer for the accrued lien. Employer is also entitled to a future credit for the balance of recovery, **with Claimant receiving the *pro rata* share of costs over the grace period** . . . ." (WCJ Decision, 5/10/2018, COL ¶ 3 (emphasis added).)

12

(*Id.*) We agree with that calculation because it accounts for the reality that the $118,380.97 debt Claimant owes Employer can be recouped by Employer declining to pay the **only** amount it currently owes her, $332.20 per week. As detailed above, it was not error for the WCJ or Board to decline to require that the weekly indemnity figure be used to determine how long it would take for Employer to recoup its subrogation lien. Because Employer stopped payment of any benefits as of October 3, 2017, the fact that it will take 356.35 weeks for Employer to be paid back in full means the subrogation lien will be satisfied around May 2024, assuming Claimant does not finally pay in full. Because $332.20 was the correct figure by which to divide the subrogation lien to yield a period of 356.35 weeks for repayment of the lien, in November 2020, the time Claimant filed the penalty petition, Employer was still under no obligation to make weekly payment of pro rata attorney's fees and costs to Claimant. Accordingly, the WCJ did not err in finding no violation of the Act, and therefore, in dismissing the Penalty Petition.

Further, we agree with Employer that any specific loss benefits to which Claimant is entitled are indeed, disability benefits, which are fully subject to subrogation. *See Kinzler*, 245 A.3d at 389 (specific loss benefits are subject to subrogation in the same manner as total disability benefits). Therefore, no specific loss benefits would have been in question until the entire balance of recovery is exhausted.

Finally, we address Claimant's contention that, essentially, Employer has not followed the approach we set out in *Griffis I*. There, we said that "[o]nce there is a full reimbursement [of the subrogation lien], Employer is able to take a credit against Claimant's ongoing indemnity benefits, minus the pro rata share, until Claimant's third-party recovery is exhausted." *Griffis I*, slip op. at 31-32. That language from

13

*Griffis I* was meant to more broadly explain the propositions involved; it did not delve into the granular detail of the mechanics of the precise source of the repayment for the subrogation lien. Given, as explained above, that Employer was in its grace period with respect to payment of indemnity benefits as of October 3, 2017, the language from *Griffis I* can be fairly read to mean that Employer "is able to [**continue**] tak[ing] a credit against Claimant's ongoing indemnity benefits" after the subrogation lien was reimbursed. *Id.* (emphasis added). Simply, our broad overview of how the subrogation lien would be repaid does not foreclose Employer's reasonable approach to securing repayment thereof, and we agree with the Board that the WCJ did not err in endorsing that reasonable approach.

To be clear, there are two overlapping grace periods in this case. First, there is the grace period with respect to indemnity benefits; Employer is entitled to cease payment of the weekly indemnity benefit until Claimant's "prepayment" in the form of the settlement proceeds Claimant retained runs out. But second, because Claimant has refused to repay the subrogation lien, Employer is in a second, independent grace period with respect to its obligation to pay costs and fees. Simply put, Employer should not have to count **toward the subrogation lien** the unpaid indemnity benefit to which it already deserves a credit into the future against the Claimant's remaining settlement funds. As a result, from the time this Court approved of Employer's nonpayment of pro rata costs and fees in 2020 until the filing of the instant Penalty Petition, there has been no intervening change to suggest that Employer has violated the Act.[20] The WCJ, therefore, did not err in declining to find a violation of the Act.

---

[20] To the extent our reasoning in *Griffis I* could be read to suggest that the unpaid indemnity benefits should be counted toward recoupment of the subrogation lien, for the reasons set forth above, we maintain that Employer's interpretation of our reasoning and approach in counting only unpaid costs and fees toward the subrogation lien was entirely reasonable.

## IV.    CONCLUSION

Employer is entitled to recoup its subrogation lien by retaining the fees and costs it would otherwise be obligated to pay over to Claimant on a weekly basis. The WCJ did not err in so reasoning, nor did the WCJ err in concluding that no violation of the Act had occurred, such that the Penalty Petition should be dismissed. Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER,** President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anna Griffis,              :
            Petitioner        :
                           :
          v.                :    No. 613 C.D. 2022
                           :
Albert Einstein Healthcare Network   :
(Workers' Compensation Appeal    :
Board),                           :
            Respondent     :

# O R D E R

NOW, March 15, 2024, the May 24, 2022 Order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge