**DEPARTMENT OF PUBLIC WELFARE/POLK CENTER,**
Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (KING),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 10, 2005.

Decided July 25, 2005.

Publication Ordered Oct. 5, 2005.

---

Peter A. Pentz, Erie, for petitioner.

Eric P. Betzner, Washington, for respondent.

Lawrence R. Chaban, Pittsburgh, for amicus curiae, Pennsylvania Trial Lawyers Association.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

Department of Public Welfare/Polk Center (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), affirming the decision of a Workers' Compensation Judge (WCJ) denying Employer a pension offset pursuant to the provisions of the Pennsylvania Workers' Compensation Act (Act).[1] We affirm.

Kenneth King (Claimant) sustained an injury at work on November 8, 1999, and began receiving total disability benefits of $459.15 per week pursuant to a notice of compensation payable. After being out of work for a year, Claimant was awarded a disability retirement benefit, retroactive to the date of his injury. As such, Claimant received a retroactive pension benefit in the amount of $9,404.32, based on a monthly pension award of $1,002.21. On February 23, 2001, Employer issued a notice of workers' compensation benefit offset, informing him that it was stopping his payments from March 17, 2001, through October 5, 2001, to recoup an alleged overpayment of benefits. Employer further stated that Claimant's workers' compensation benefits would thereafter be reduced to the rate of $325.88, per week. This reduction was based on the assertion that $578.33 per month or $133.26 per week of Claimant's monthly pension was funded by Employer.

Claimant responded by filing a petition to review compensation benefit offset. In the petition, he alleged that Employer improperly calculated the offset, overreached in totally suspending his benefits, and vio-

---

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4; 2501–2626.

lated his due process rights by its unilateral actions.

The only witness called to testify regarding the pension calculations was Linda Miller, Director of the Benefits Determination Division of the State Employees' Retirement System (SERS). She was presented on behalf of Employer.

Ms. Miller testified that Claimant receives pension benefits through SERS. She explained that the plan is funded through employee money, employer money and investment earnings. She stated that it is a defined benefit plan, which means that the pension amount is based on a formula. The formula takes into account the member's earnings, his years of service and a multiplier.

The following testimony given by Ms. Miller was found as fact by the WCJ:

[Ms. Miller] confirmed that an actuary had designed the spreadsheet that they use to perform these various calculations, and then someone inputs the date [sic] into a computer which provides the figures. She was then asked various questions simply further explaining what she already said about how the calculations are performed. When asked to explain where there is any documentation concerning what the actual amount of money would be which the Commonwealth contributed to the retirement plan, she again indicated that is based on the calculation working from the total present value and the total employee share with the difference being what the Commonwealth would consider to be the employer-funded part. When asked to agree that there is nothing to show how much the State actually contributed, as we know that the Claimant contributed specific amounts of money from his date of hire through December 31, 1995, and then from January 1, 1996, through his retirement date, she

responded 'no, there is not ... we're a defined benefit plan not a defined contribution plan.' When asked whether there was an annuity purchased for [Claimant] to fund his retirement, she responded 'no ... we invest the retirement contribution so that the fund is solvent to provide a benefit to us all.' When asked whether this money is kept in a separate account, she indicated 'the retirement system is a separate entity ... investments is not my expertise ... I am in retirement benefits.' When asked whether there is a separate trust fund where all of the retirement money is kept, she indicated that she does not understand the question. Upon further questioning, she did not seem to know whether or not there is a fund somewhere containing all of the retirement contributions: but she indicated she is aware that the State Employee Retirement System has investments which they use to fund the retirement benefits. She indicated that they would need to ask someone else to determine if a certain amount is put into a fund, by or for [Employer] or other departments of the Commonwealth to fund their employees' retirement benefits. When asked 'so, you don't know if [Employer] actually funds [Claimant's] pension directly, do you?' she responded 'once [Claimant] retired, the retirement system is funding his retirement benefit ... I think you need to ask the Office of the Budget ... how they allocate funds for their members and their employees ... I honestly have no idea how they do that.'

(Employer's brief, WCJ opinion, finding of fact 5).

Following the hearing, the WCJ found as follows:

There is no evidence that the Commonwealth paid any monies into a pension plan which in turn funded the disability

retirement pension benefits which the Claimant is receiving. On the contrary, the evidence presented shows that Commonwealth employees are entitled to receive a pension based exclusively upon their years of service and their highest average salary for a specific time period and their 'multiplier'; and that a certain percentage is deducted out of the employee's paychecks which the Employer treats as a contribution toward the cost of their retirement benefits. The employee contributions are managed and 'invested' by the State Employees Retirement System; but there is no evidence that the Commonwealth actually pays any money into these 'investments.' The Employer, in seeking to take advantage of the Act 57 amendments to Section 204 concerning offsets for pension benefits essentially pretends that they had put contributions into a pension fund throughout the duration of an employee's career. Taking the monthly retirement benefit (notably not even the actual monthly retirement benefit but rather an artificial number which the Claimant would have received if he chose a different option) and projecting out into the future using his life expectancy, they calculate what they would consider to be the present value of the Claimant's retirement benefits; and then, taking the employee's actual monetary contributions which were withheld from his paycheck throughout his career and multiplying by an 8.5% annual interest assumption, they arrive at a number which would have represented the amount that the Employer would have had to contribute into a pension fund if in fact the Commonwealth had been making contributions into a pension fund throughout the employee's working career.

(Employer's brief, WCJ opinion, finding of fact No. 6). Accordingly, the WCJ granted Claimant's petition to review compensation benefit offset.

Employer appealed to the Board, alleging that the decision of the WCJ was not supported by substantial, competent evidence of record. The Board noted that no evidence was presented showing that Employer actually contributed to the fund. The Board also noted that Employer offered no explanation as to why it failed to offer evidence of its per employee contribution or of its contributions based on actuarial calculations. The Board further noted that Employer claimed that the 8.5% interest rate accurately represented the fund's income, but did not provide any evidence as to how this was determined. Accordingly, the Board affirmed the decision of the WCJ.

■ Employer now appeals to this Court.[2] Employer alleges that the Board erred in granting Claimant's petition as the uncontradicted testimony of Ms. Miller was sufficient to establish that Employer's entitlement to a pension offset.

Section 204(a) of the Act, 77 P.S. § 71(a), provides in pertinent part:

Benefits from a pension plan to the extent funded by the employer directly

---

2. Our scope of review is limited to determining whether there has been a violation of constitutional rights, an error of law or whether necessary findings of fact are supported by substantial evidence. *Tri–Union Express v. Workers' Compensation Appeal Board (Hickle)*, 703 A.2d 558 (Pa.Cmwlth. 1997). We also acknowledge our Supreme Court's decision in *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 189, 812 A.2d 478 (2002), wherein the Court held that "review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc.*, 571 Pa. at 203, 812 A.2d at 487.

liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).

The pension plan at issue was described by Ms. Miller as a defined benefit plan. A defined benefit plan is a plan "in which the benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employe's retirement." 34 Pa.Code § 123.2.

Ms. Miller testified that the present value of Claimant's pension plan was $140,038.96. She stated that Claimant contributed $21,764.38 to the plan during the twenty years he worked for Employer. Using an 8.5% interest rate she determined that his total contribution to the plan was $62,077.77. The 8.5% interest rate was set by an actuary and Ms. Miller could not provide any information on how this rate was determined and why the rate would not vary over twenty years. Ms. Miller then subtracted $62,077.77 from the pension plan's $140,038.96, and concluded that the $77,961.19 that remained was Employer's contribution.

Ms. Miller acknowledged that she could not provide any evidence to show in what way, if any, Employer actually contributed to the plan. Her job was essentially to enter the data and calculations given to her by an actuary into a spreadsheet. She did not participate in the development of the spreadsheets or the formulas and could not provide any information as to how the numbers were derived or how the plan was funded.

Employer argues that the WCJ and the Board somehow misconstrued the nature of a defined pension plan and wrongly expected it to establish when specific contributions were made. Employer argues that it does not matter if it funds the pension on the employee's last day of work or at some other date.

Based on review of the record, we conclude that it is Employer who is misconstruing the determination made by the WCJ and the Board. The question involved in this case was whether or not Employer established that it provided any funding to the pension plan. This case did not involve a question as to when Employer funded the plan or the particular dates the plan was funded. There was no determination made that Employer could not determine contributions by way of actuary tables.

At the hearing before the WCJ, Employer established that Claimant funded the plan and it then applied an unvarying rate of interest to those funds, thereby determining Claimant's total contribution. Employer then presumed that any additional funds left in the plan were contributed by it, even though it could not explain how the interest rate or other actuarial calculations were derived.

■ Employer further argues that as Claimant filed the petition to review compensation benefit offset, he has the burden of proving that Employer is not entitled to a credit. We completely reject this claim. Employer is the party seeking to receive a credit and the party seeking to change the status quo. The party seeking to change the status quo has the burden of proof. *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256 (Pa.Cmwlth.1998).

■ Employer issued a notice of workers' compensation benefit offset, claiming it was entitled to a credit. In support of that claim, Employer attached a number of documents. Claimant responded by filing a petition to review compensation benefit offset. The WCJ determined that all Em-

ployer had produced was "some technical, confusing records that don't establish anything." (R.R. at 46a). Employer was then permitted to produce the additional testimony of Ms. Miller. After hearing all the evidence, the WCJ concluded that there was no evidence establishing that Employer was entitled to receive a credit. It is an employer's burden to raise the issue of credit. *Toy v. Workmen's Compensation Appeal Board (Alltel Pa., Inc.)*, 651 A.2d 701 (Pa.Cmwlth.1994). Furthermore, the purpose of the Act is to benefit injured workers. *Gallie v. Workers' Compensation Appeal Board (Fichtel & Sachs Industries )*, 580 Pa. 122, 859 A.2d 1286 (2004). The Act's purpose would not be served by allowing an employer to unilaterally take a credit toward an award of benefits and then placing the burden on a claimant to access employer's records and present evidence as to the appropriateness of the credit.

Based on the evidence of record, we conclude that the Board did not err. Employer is only entitled to a credit to the extent it funded the plan and the record is devoid of sufficient evidence that it provided funding.

Accordingly, the order of the Board is affirmed.[3]

### ORDER

AND NOW, this 25th day of July, 2005, the order of the Workers' Compensation Appeal Board is affirmed.

---

**3.** Employer alleges, in the alternative, that we should remand the case to the WCJ to determine the amount of the offset. As we have affirmed the decision of the Board that there was not sufficient evidence of record to grant Employer an offset, we deny the request for remand.