**CITY OF PHILADELPHIA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ANDREWS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 28, 2008.

Decided May 12, 2008.

---

Jennifer Chun Strawn, Philadelphia, for petitioner.

Marianne Henry, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

City of Philadelphia (Employer) petitions for review from an order of the Worker' Compensation Appeal Board (Board) that affirmed the Decision of a Workers' Compensation Judge (WCJ) granting a Reinstatement Petition and a Penalty Petition filed by Cynthia Andrews (Claimant). We affirm.

Claimant sustained an injury to her right knee while in the course and scope of her employment on May 30, 2000. Claimant's average weekly wage is $878.24 with a corresponding benefit rate of $585.50. Claimant began receiving a service-connected disability pension from Employer in January 12, 2002 in the amount of $1,990.74. Employer unilaterally ceased paying Claimant's workers' compensation benefits as of July 13, 2002 absent a judge's decision, supplemental agreement, or a Notice of Workers' Compensation Benefit Offset, LIBC–761.

Claimant filed a Reinstatement Petition on January 12, 2004. She further filed a Penalty Petition alleging that Employer violated the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2708, by failing to pay benefits when due.

Claimant received no workers' compensation benefits from July 13, 2002 until March of 2005 when a stipulation was approved providing for Claimant to receive her past due benefits. At that time, Employer agreed to pay Claimant the difference between her workers' compensation entitlement and her monthly pension amount, taking a 100% credit for her pension benefits. The stipulation, approved by the WCJ on March 23, 2005, reads, in pertinent part:

The City maintains that it is entitled to a 100% credit for pension benefits paid.

Claimant maintains that the City is not entitled to a 100% credit for pension benefits because the pension is not 100% funded by the City. *The Parties (sic) shall continue to litigate the issue of what percent of the pension benefits are funded by the City.* If it is found by the Workers' Compensation Judge that the City funds less than 100%, the City agrees that the claimant's past due benefits ... will be subject to revision. (Emphasis added).

(R.R. at 44a).

Employer presented the testimony of its adjuster, Kristy Murray, senior claims adjuster for Ward North America, its third party administrator. Ms. Murray explained Employer offers an "ordinary" disability pension that an employee would receive if she is injured but the injury is not work-related. She added that Employer also offers a service-connected disability pension for individuals who sustain a disabling work-related injury. According to Ms. Murray, Claimant receives a service-connected disability pension. Ms. Murray stated that when an employee's monthly pension payments are greater than the workers' compensation benefits that would ordinarily be due, no indemnity benefits are paid. If the monthly workers' compensation benefits are greater than the monthly pension payments, the injured worker's indemnity benefits are reduced accordingly. Ms. Murray testified that in calculating pension offsets, she offsets the claimant's benefits in an amount equal to the full amount of that claimant's pension benefits.

Ms. Murray agreed that a Notice of Workers' Compensation Benefit Offset must be provided to a claimant prior to taking an offset. She further acknowledged that that document was not completed in this instance. Ms. Murray conceded the last controlling legal document in the instant matter was the NCP. She agreed that Claimant was not paid any workers' compensation benefits for a period running between 2002 and 2005.

By a decision dated August 11, 2006, the WCJ credited Ms. Murray's testimony as the reason Claimant's benefits were suspended, the status of Claimant's claim, and the receipt of Claimant's wage loss benefits. Nonetheless, he concluded that Employer failed to present sufficient evidence to establish that it is entitled to any offset for pension benefits received by Claimant. The WCJ determined that Claimant was entitled to a reinstatement of compensation benefits at a rate of $585.50 per week beginning July 14, 2002 and ongoing. The WCJ noted that Employer was entitled to a credit for any compensation paid in light of the parties' prior stipulation.

The WCJ further determined that Employer violated the Act by unilaterally suspending Claimant's benefits absent proper documentation. He awarded fifty percent penalties on all unpaid compensation. Moreover, the WCJ found that Employer failed to present a reasonable contest in this matter as the only evidence it presented in this matter confirmed that Claimant's workers' compensation benefits were ceased unilaterally and without legal justification. The WCJ added that despite numerous continuances to facilitate the presentation of evidence concerning the funding of Employer's pension plan, no evidence was ever submitted. The WCJ awarded Claimant unreasonable contest attorney's fees in the amount of $5,000.00 based on the number of hearings as well as the complex nature of the issues involved.

Both parties appealed. The primary purpose of Claimant's appeal concerned the fact that the WCJ's Decision failed to indicate whether the fee agreement between her and her attorney was approved.

Employer's appeal asserted the WCJ erred in reinstating Claimant's benefits and in awarding penalties and counsel fees. In an order dated September 14, 2007, the Board affirmed the WCJ's Decision. It further approved Claimant's fee agreement with counsel. This appeal followed.[1]

Employer argues on appeal that the WCJ erred in reinstating Claimant's benefits in light of her receipt of a service-connected disability pension. It argues that this Court has consistently held that it is entitled to a pension offset when an injured worker begins receiving a service-connected disability pension. In support of its argument, Employer relies primarily on two cases issued by this Court in which it was a party, *City of Phila. v. Workers' Compensation Appeal Board (Hunter)*, 912 A.2d 889 (Pa.Cmwlth.2006) and *Murphy v. Workers' Compensation Appeal Board (City of Phila.)*, 871 A.2d 312 (Pa. Cmwlth.2005). Both of these cases do hold that Employer may offset a claimant's workers' compensation benefits in light of her receipt of a service-connected disability pension as the payments made pursuant to the pension plan are in lieu of compensation. Employer's reliance on these cases is misplaced, however, as the claimants in those cases were injured prior to the effective date of Act 57.[2]

For injuries occurring prior to the 1996 amendments to the Act, known as Act 57, credits have been allowed for pension benefits paid in lieu of compensation. *See Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Gounaris)*, 714 A.2d 550 (Pa.Cmwlth.1998). The factors employed by the courts to determine whether the employer is entitled to a cred-

it have varied in response to the facts of each case. These factors include the employee's contribution to the pension, if any; whether the benefits can be depleted; whether pension payment amounts would vary depending on years of service; whether the pension ceased upon recovery from the disability, and the pension vesting period. *See Toborkey v. Workmen's Compensation Appeal Board (H.J. Heinz Co.)*, 655 A.2d 636 (Pa.Cmwlth.1995)(denying employer a credit in relation to the claimant's receipt of disability pension benefits); *Oleksa v. Workers' Compensation Appeal Board (Keystone Coal Mining Corp.)*, 734 A.2d 79 (Pa.Cmwlth.1999)(granting employer a credit in relation to the claimant's receipt of disability pension benefits). The critical factor, however, is whether the disability pension was an accrued entitlement that has been built up as a result of services for the employer, and represents deferred compensation, or payments in relief of inability to labor. *Toborkey*, 655 A.2d at 640.

Section 204(a) of the Act, 77 P.S. § 71(a), was amended by Act 57 and provides, *inter alia*, that the benefits of a pension plan shall be credited against a worker's compensation award to the extent funded by the employer directly liable for the payment of compensation received by an employee. Sections 32.1 and 33 of Act 57 direct that the amendment of Section 204(a) applies only to claims for injuries sustained after the effective date of Act 57. The change in legislation required the Bureau of Workers' Compensation (Bureau) to adopt regulations addressing the offsets now permissible under amended Section 204(a). Section 123.8(b) of the Act 57 Regulations applies the Act's offset provision

---

1. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Stehr v. Workers'*

*Compensation Appeal Board (Alcoa)*, 936 A.2d 570 (Pa.Cmwlth.2007).

2. Act of June 24, 1996, P.L. 350.

to both defined-benefit and defined-contribution plans. 34 Pa.Code § 123.8(b).

■ A defined-contribution plan is a plan that provides for an individual account for each participant and for benefits based solely upon the amount of accumulated contributions and earnings in the participant's account. 34 Pa.Code § 123.2. Because the account is individualized, employer contributions to the employee's pension are easily ascertained. *Pennsylvania State Univ. v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225, 231 (Pa.Cmwlth.2006). A defined-benefit plan is a pension plan in which the benefit level is established at the commencement of the plan and actuarial calculations determine the varying contributions necessary to fund the benefit at an employee's retirement. 34 Pa.Code § 123.2. Where there is a defined-benefit plan, an employer cannot meet its burden of establishing the amount of its offset absent actuarial testimony. *Hensal*, 911 A.2d at 232; *See also Department of Public Welfare/Western Ctr. v. Workers' Compensation Appeal Board (Cato)*, 911 A.2d 241 (Pa.Cmwlth.2006).

■ In either case, the employer bears the burden of proving the extent it funded the pension plan in question. *Department of Public Welfare Polk Ctr. v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343 (Pa.Cmwlth.2005). The Act's purpose would not be served by allowing an employer to unilaterally take a credit toward an award of benefits and then placing the burden on the claimant to access employers' records and present evidence regarding the appropriateness of the credit. *Id.* at 348. Once the employer's contribution to a claimant's monthly pension is determined, that number shall be divided by 4.34 to obtain its weekly offset. 34 Pa.Code § 123.9(a).

■ Section 204(a) of the Act, as amended, serves the legislative intent of reducing the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings. *Hensal*, 911 A.2d at 227–8. Similarly, it implicitly recognizes that public policy bars an employer from utilizing an employee's own retirement funds to satisfy its workers' compensation obligation. *Id.* at 228.

■ Claimant sustained her injury on May 30, 2000, well after the effective date of Act 57. Consequently, pursuant to Sections 32.1 and 33 of Act 57, amended Section 204(a) of the Act controls her entitlement to workers' compensation benefits, or, more accurately, Employer's ability to offset the same. As indicated in Section 204(a) of the Act and Section 123.8(b) of the Act 57 Regulations, Employer may take a credit for Claimant's receipt of pension benefits in defined-benefit and defined-contribution plans to the extent it funded those benefits. The Employer's right to a pension offset in post-Act 57 cases no longer turns on whether the pension constitutes payments in lieu of compensation. Nor does it matter, contrary to Employers' assertion, that the pension is a service-connected disability pension. In so holding, we do not suggest in any fashion that *Hunter* or *Murphy*, or any of the cases that predated those opinions that discussed the issue of whether a claimant's pension benefits were paid in lieu of compensation as opposed to deferred compensation, are no longer good law. The scope of those cases, however, is limited to matters wherein the claimant was injured prior to the effective date of Act 57.

■ In order to take advantage of amended Section 204(a) of the Act allowing for Employer to offset Claimant's workers' compensation benefits in light of Claimant's receipt of a pension, it needed to

present evidence as to the extent it funded the pension plan. *King.* The only evidence contained in the record other than various bureau documents is the testimony of Ms. Murray. While Ms. Murray testified that Claimant's workers' compensation benefits were ceased once she began receiving her service-connected disability pension, she did not offer any testimony concerning the extent Employer funded her pension in order to determine the appropriate amount of its offset. Thus, as the WCJ and the Board correctly noted, Employer failed to present sufficient evidence establishing its entitlement to an offset. As such, the WCJ did not err in reinstating Claimant's benefits.

Employer suggests that because its service-connected disability pension plan was intended to compensate Claimant for the same work-related injury that served as the basis for her receipt of workers' compensation benefits, it should not have to prove the extent it funded the plan. It contends that in seeking an offset, it is essentially following the legislative intent of Section 204(a) to reduce the cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings as stated in *Hensal.*

Our ruling does not preclude Employer from taking an offset so long as it presents evidence concerning the extent it funded the pension. Thus, it can avoid paying duplicate benefits so long as it meets its burden in this regard. We add that *Hensal* further instructs that in amending Section 204(a), there was a recognition that an employer should be prohibited from utilizing an employee's own retirement fund

contributions to satisfy its workers' compensation obligations. It is for this reason that Employer needs to present evidence concerning the extent it funded Claimant's pension benefits.[3]

Employer further argues that the WCJ erred in awarding penalties. We disagree.

Section 435(d)(i) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 991(d)(i), provides that an employer may be penalized ten percent of the amount awarded for its failure to comply with the Act or its supporting regulations and that, in cases of unreasonable or excessive delays, the penalties may be increased up to fifty percent. A claimant who files a penalty petition must first meet her initial burden to prove that a violation of the Act occurred. *Shuster v. Workers' Compensation Appeal Board (Pennsylvania Human Relations Comm'n)*, 745 A.2d 1282 (Pa.Cmwlth.2000). Thereafter, the burden shifts to the employer to prove that a violation of the Act had not occurred. *Id.* at 1288. The decision to impose penalties as well as the amount of penalties is within the discretion of the WCJ. *Brutico v. Workers' Compensation Appeal Board (U.S. Airways, Inc.)*, 866 A.2d 1152 (Pa.Cmwlth.2004). The WCJ's decision regarding penalties will not be disturbed on appeal absent an abuse of discretion. *Department of Pub. Welfare v. Workers' Compensation Appeal Board (Overton)*, 783 A.2d 358 (Pa. Cmwlth.2001).

Generally, an employer cannot cease paying a claimant's workers' compensation benefits absent some event that relieves the employer of its obligation. *See Sheridan v. Workers' Compensation*

---

3. This Court recognizes that in *Murphy*, we stated that the City of Philadelphia's service-connected disability pension was funded by Employer. *Murphy*, 871 A.2d at 314. It does appear, however, that the pension does rely on employee contributions as well. We indicated that "Claimant did receive approximately $12,000–$14,000 back from Employer. This amount was her contribution to the pension fund." *Id.* at 315, fn. 5.

*Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998)(holding absent an order from a workers' compensation authority, a court, an agreement of the parties, or the filing of a petition which acts as an automatic supersedeas, an employer's obligation to pay out benefits continues). *See also Green v. Workmen's Compensation Appeal Board (Ass'n for Retarded Citizens)*, 670 A.2d 1216 (Pa.Cmwlth.1996)(holding an employer may not properly cease payment of compensation benefits in the absence of either a valid final receipt signed by the claimant or a WCJ's order terminating or suspending the employer's obligation to pay such benefits). Moreover, unilateral cessation of a claimant's benefits triggers the penalty provisions of the Act. *M.A. Bruder & Son, Inc. v. Workmen's Compensation Appeal Board (Harvey)*, 86 Pa.Cmwlth.353, 485 A.2d 93 (1984). A Notice of Workers' Compensation Benefit Offset shall be provided to the claimant at least twenty days prior to taking any offset for pension benefits. 34 Pa.Code § 123.4(b). Moreover, as per the Act, penalties may be awarded for violation of a Bureau regulation. *Devault Packing Co. v. Workmen's Compensation Appeal Board (Jones)*, 670 A.2d 741 (Pa. Cmwlth.1996).

 In the present matter, Employer unilaterally ceased paying Claimant's workers' compensation benefits in 2002 and did not resume making any amount of indemnity payments until a stipulation entered into in 2005. Employer's own witness, Ms. Murray, acknowledged that workers' compensation benefits were ceased based upon Claimant's receipt of pension benefits and that no Notice of Workers' Compensation Benefit Offset was completed. She further recognized that the last controlling legal document was an NCP. Therefore, consistent with Section

123.4(b) of the Act 57 Regulations as well as *Sheridan, Green, Harvey,* Employer violated the Act and exposed itself to an award of penalties.

As explained in *Brutico,* the decision as to whether to award penalties and their amount is at the discretion of the WCJ. Moreover, Section 435(d)(i) of the Act indicates that in the case of excessive delays, penalties may be increased up to fifty percent. Regardless of whether Employer would have ultimately been entitled to a pension offset had it presented sufficient evidence, it did unilaterally cease payment of Claimant's benefits absent the proper documentation and did not pay any indemnity benefits for nearly three years. The WCJ awarded fifty percent penalties on all unpaid compensation due to this violation. We see no abuse of discretion as required by *Overton* to warrant a reversal of that award.

Employer nonetheless contends that a Notice of Workers' Compensation Benefit Offset need not be filed when it seeks to offset a claimant's workers' compensation benefits based on her receipt of a service-connected disability pension. As we have previously explained, because Claimant was injured after the effective date of Act 57, Employer's right to offset Claimant's workers' compensation benefits is governed by amended Section 204(a) of the Act. The Bureau adopted regulations addressing the offsets now permissible under the same. Section 123.4(b) of the Act 57 regulations instructs that a claimant is to be provided with a Notice of Workers' Compensation Benefit Offset at least twenty days prior to taking any offset for pension benefits. Employer was required to provide Claimant with this document as her injury occurred after the effective date of Act 57.[4]

---

4. We note that in advancing this argument,

Employer relies on *Hunter.* A careful reading

Employer further argues on appeal that the WCJ erred in finding it presented an unreasonable contest and, in turn, awarding unreasonable contest attorney's fees. We disagree.

Section 440(a) of the Act, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. § 996(a), provides that if an employer contests liability it will be liable for claimant's costs, including counsel fees, if the matter is resolved in whole or in part in the claimant's favor. That section specifies, however, that attorney's fees may be excluded if the employer presents a reasonable contest. The reasonableness of an employer's contest depends upon whether the contest was prompted to resolve a genuinely disputed issue. *Coyne v. Workers' Compensation Appeal Board (Villanova Univ.)*, 942 A.2d 939 (Pa.Cmwlth.2008). The employer has the burden of presenting sufficient evidence to establish a reasonable basis for its contest. *Frankford Hosp. v. Workers' Compensation Appeal Board (Walsh)*, 906 A.2d 651 (Pa.Cmwlth.2006). Whether a reasonable basis exists for an employer's contest of liability is a question of law and therefore subject to this Court's review. *Steeple v. Workers' Compensation Appeal Board (PA. Liquor Control Bd.)*, 796 A.2d 394 (Pa.Cmwlth.2002).

The WCJ concluded that Employer unreasonably contested Claimant's Reinstatement Petition because it failed to present any evidence as to the extent it funded Claimant's pension. He added that the absence of this evidence was magnified for the reason that multiple continuances were requested in order to present such evidence. The WCJ noted that Employer unreasonably contested Claimant's Penalty Petition because Employer's own witness

confirmed that Claimant's benefits were unilaterally suspended absent any legal documentation permitting such action. Based on his determination, he awarded unreasonable contest attorney's fees.

*Frankford Hosp.* dictates that an employer has the burden of presenting sufficient evidence to establish a reasonable basis for its contest. Sections 32.1 and 33 of Act 57 instruct that amended Section 204(a) applies to claims for injuries sustained after its effective date. Section 204(a) expressly states that an employer may only offset a claimant's workers' compensation benefits based on her receipt of pension benefits to the extent those pension benefits are funded by the employer. Employer entered into a stipulation whereby it agreed that the WCJ was to determine what percent of Claimant's pension benefits are funded by the City. It never submitted any evidence, however, concerning the extent of its funding. Consequently, we cannot agree that the WCJ erred in finding Employer unreasonably contested Claimant's Reinstatement Petition.

Moreover, consistent with *Devault Packing Co.*, penalties may be awarded for violation of a Bureau regulation. As noted, Section 123.4(b) of the Act 57 regulations instructs that a claimant is to be provided with a Notice of Workers' Compensation Benefit Offset prior to taking an offset for pension benefits. Ms. Murray agreed that no Notice of Workers' Compensation Benefit Offset or any other legal document authorized Employer to cease paying Claimant indemnity benefits. Thus, we cannot disagree that Employer unreasonably contested Claimant's Penalty Petition.

Employer further contends that assuming an award of unreasonable contest at-

---

of *Hunter* reveals that even in pre-Act 57 cases, an Employer must still follow the Act's

formal procedures as they may be applicable to a given claim. *Hunter*, 912 A.2d at 893.

torney's fees is proper, the WCJ erred in arbitrarily awarding the amount of $5,000.00 without entertaining a factual inquiry into the amount of work and the degree of difficulty performed by Claimant's counsel. We again disagree.

Section 440(b) of the Act, 77 P.S. § 996(b), states in relevant part:

If counsel fees are awarded and assessed against the insurer or employer, then the referee must make a finding as to the amount and the length of time for which such counsel fee is payable based upon the complexity of the factual and legal issues involved, the skill required, the duration of the proceedings and the time and effort required and actually expended.[5]

■■■ Under the Act, the WCJ is given the authority in the first instance to determine what constitutes a reasonable sum for attorney's fees. *Eugenie v. Workmen's Compensation Appeal Board (Sheltered Employment Serv.)* 140 Pa. Cmwlth.51, 592 A.2d 358 (1991). As long as the amount and difficulty of the work performed by Claimant's attorney is *reasonably related* to the fee awarded, we will not disturb the WCJ's award. *Elite Carpentry Contractors v. Workmen's Compensation Appeal Board (Dempsey),* 161 Pa. Cmwlth.89, 636 A.2d 250, 253 (1993).

■■■ In Finding of Fact No. 11, the WCJ concluded $5,000.00 would be a reasonable amount of attorney's fees. He supported this amount by stating "[t]his award is based on the number of hearings as well as the complex nature of the issues involved." (R.R. at 38a).

■■■ Pursuant to *Eugenie,* the WCJ is to determine what constitutes a reasonable sum for an attorney's fee. Consistent with the directive of Section 440(b) of the Act,

the WCJ is required to consider an acceptable level of time and effort required to litigate a claim on a claimant's behalf. We are of the opinion that the WCJ has made a sufficient assessment in this matter similar to the WCJ's findings in *Elite.* In that case, this Court held that when the WCJ recites the number of hearings scheduled, the length of time the litigation was pending, the number of petitions filed and litigated, and the number of briefs written, such a recitation constitutes a sufficient assessment of the difficulty of the work performed and a *quantum meruit* fee can be based on that assessment. *Elite,* 636 A.2d at 253. Here, the WCJ noted that there were a number of hearings. There were seven hearings and the litigation transpired over a year and a half. The WCJ further considered the complexity of the litigation. Based on his findings, we cannot agree with Employer that the WCJ's actual award of attorney's fees in the amount of $5,000.00 is not *reasonably related* to the amount and difficulty of the work performed.

Accordingly, we affirm.

### ORDER

AND NOW, this 12th day of May, 2008, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

---

5. WCJs were previously known as "referees."