**CITY OF PHILADELPHIA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GREVY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 2008.
Decided March 27, 2009.

Martin G. Malloy, Philadelphia, for petitioner.

W. Michael Mulvey, Philadelphia, for respondent.

BEFORE: LEADBETTER, President Judge, COHN JUBELIRER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN JUBELIRER.

City of Philadelphia (Employer) petitions for review of two orders of the Work-

ers' Compensation Appeal Board (Board). Employer first petitions for review of the April 12, 2004 order of the Board, which affirmed a Workers' Compensation Judge's (WCJ) decision and order awarding Employer an offset/credit for service-connected disability pension benefits paid to Daniel Grevy (Claimant), but remanded the matter for a determination as to the amount of the offset/credit to which Employer was entitled pursuant to Section 204(a) of the Workers' Compensation Act (Act).[1] Employer also petitions for review of the April 22, 2008 order of the Board, which affirmed the WCJ's decision and order on remand concluding that Employer was entitled to an offset/credit of 73.149 percent of the service-connected disability pension benefits paid to Claimant. On appeal, Employer essentially argues that it is entitled to a dollar-for-dollar offset/credit for 100 percent of the pension benefits paid to Claimant because such benefits were paid to Claimant in lieu of workers' compensation. Because we agree with the Board that Employer is only entitled to take an offset/credit to the extent that it funded Claimant's service-connected disability pension benefits, and not for the entire amount of the pension benefits paid to Claimant, we affirm the Board's orders.

The relevant facts in this case are as follows. On August 2, 1999, Claimant sustained puncture wounds to his left upper back, arm, and lung as a result of being stabbed by an inmate while working as a correctional officer for Employer. Due to his injuries, Claimant was unable to return to work. Employer issued a Notice of Compensation Payable (NCP) acknowledging liability for Claimant's injuries.[2] Employer continued paying Claimant his regular wages in lieu of workers' compensation until February 19, 2001, when Claimant was separated from his employment due to his injuries. Following Claimant's separation from his employment, Employer began paying Claimant total disability workers' compensation benefits at the rate of $506.07 per week.

Claimant subsequently applied for service-connected disability pension benefits. As part of the application process, Claimant signed a document entitled "Agreement re: Workmen's Compensation" (Pension Agreement), which indicated that Employer would be entitled to an offset/credit against any award of workers' compensation benefits for pension benefits paid.[3] On August 16, 2001, Employer's

---

1. Act of June 2, 1915, P.L. 736, *as amended* by the Act of June 24, 1996, P.L. 350 (Act 57), 77 P.S. § 71(a).

2. Employer later agreed to expand the description of injury in the NCP to include post-traumatic stress disorder, which Claimant developed as a result of the August 2, 1999 stabbing.

3. Specifically, the Pension Agreement provides as follows:

Agreement entered into the 7 day of March, 2001 between Daniel S. Grevy, hereinafter referred to as "applicant" and the Board of Pensions and Retirement of the City of Philadelphia, hereinafter referred to as "board".

WHEREAS, applicant has applied to Board for service-connected disability re-

tirement benefits by reason of disability sustained by applicant . . ., and

WHEREAS, under the Retirement System Ordinance of December 3, 1956 . . . under which I am entitled to retire or receive survivorship benefits, it is provided that the Board shall deduct from such retirement or survivorship benefits the amount of any Workmen's Compensation benefits which I may receive or to which I may become entitled, and

WHEREAS, no application for such Workmen's Compensation benefits has been filed by me or no award of such benefits has been made to me, or having received an award, the said award has been suspended, and

WHEREAS, I am desirous of receiving the full amount of the retirement or surviv-

Board of Pensions and Retirement (Board of Pensions) awarded Claimant service-connected disability pension benefits. Claimant's pension benefits were made retroactive to the date of his separation. Claimant began receiving $2,153.07 per month (or $496.86 per week) in pension benefits, which was $9.21 less than what he was receiving per week in workers' compensation benefits. After Claimant was awarded pension benefits, Employer ceased paying workers' compensation benefits to Claimant.[4]

On September 26, 2001, Claimant filed a Petition to Reinstate Compensation Benefits (Reinstatement Petition I) and a Petition for Penalties (Penalty Petition I). Claimant filed a second Petition to Reinstate Compensation Benefits (Reinstatement Petition II; with Claimant's Reinstatement Petition I, Reinstatement Petitions) and a second Petition for Penalties (Penalty Petition II; with Claimant's Penalty Petition I, Penalty Petitions) on November 6, 2001. In his Reinstatement Petitions and Penalty Petitions, Claimant alleged that Employer violated the Act by ceasing payment of his workers' compensation benefits without following the proper procedures. Claimant further alleged that he was entitled to reinstatement of his workers' compensation benefits, assessment of a penalty against Employer, and unreasonable contest attorney's fees. Employer filed responsive answers denying the allegations contained in Claimant's Reinstatement Petitions and Penalty Petitions. Employer also filed a Petition to Modify Compensation Benefits (Modification Petition) on December 18, 2001, seeking an offset/credit against Claimant's workers' compensation benefits for

---

orship benefits provided by the Retirement System Ordinance immediately without awaiting determination of any application for and without deduction for Workmen's Compensation benefits.

NOW, THEREFORE, in consideration of the following and intending to be legally bound hereby it is agreed as follows:

1. The Board shall pay to applicant the full amount of retirement or survivorship benefits.

2. In the event any Workmen's Compensation benefits *(other than medical services and funeral benefits)* should be awarded to applicant then the benefits previously paid to applicant or applied on his behalf under the Retirement System Ordinance aforesaid shall be considered and determined to be payments of Workmen's Compensation as set forth in Secs. 206.3 and 209.5 of the said Ordinance. The City of Philadelphia shall be entitled to credits for such payments against any award of such Workmen's Compensation benefits for the period during which such retirement benefits have been paid or applied to the extent of Workmen's Compensation payments payable to applicant but not in excess of the benefits actually paid under Secs. 206 or 209 of the said ordinance.

3. Thereafter there shall be deducted from such retirement or survivorship benefits payable to me the amount of Workmen's Compensation benefits paid or payable to me as provided by Secs. 206.3 and 209.5 of the said ordinance.

4. Where the City of Philadelphia shall be entitled to subrogation under the Workmen's Compensation Act, payments made by the Board under this agreement shall be considered as Workmen's Compensation as set forth in Paragraph 2 above.

5. Applicant shall not be required to make application for or prosecute any application already made for Workmen's Compensation benefits as a condition of receiving the full amount of survivorship benefits payable, nor shall it prevent or affect the right of applicant to make or prosecute such application.

(Pension Agreement, WCJ Hr'g Tr., Feb. 14, 2002, Ex. No. E–1 (underlining indicating handwritten items).)

4. On December 17, 2001, Employer began paying Claimant $9.21 per week in workers' compensation benefits and paid Claimant for 16 weeks of past due benefits totaling $149.54.

the service-connected disability pension benefits that were paid to Claimant.

Employer's Modification Petition was consolidated with Claimant's Reinstatement Petitions and Penalty Petitions, and the matter was assigned to a WCJ for disposition. The WCJ held several hearings at which the parties were given the opportunity to present evidence in support of, or in opposition to, the Reinstatement Petitions, Penalty Petitions, and Modification Petition.

In support of his Reinstatement Petitions and Penalty Petitions, Claimant testified on his own behalf. Claimant testified regarding his injury, his receipt of workers' compensation benefits, and his later receipt of service-connected disability pension benefits. (WCJ Hr'g Tr. at 6–13, Feb. 14, 2002.)

In support of its Modification Petition, and in opposition to Claimant's Reinstatement Petitions and Penalty Petitions, Employer presented the testimony of James Kidwell, Acting Executive Director of the Board of Pensions. Mr. Kidwell testified that Claimant, who is a member of Pension Plan J, was required to contribute 3.75 percent of his social security covered wages, or 6 percent of his wages if he earned more than what was covered by social security, to Employer's pension fund during the course of his employment. (WCJ Hr'g Tr. at 32, Apr. 18, 2002.) Mr. Kidwell explained that Claimant's eligibility for service-connected disability pension benefits is not dependent on his years of service and that the amount of benefits that Claimant is receiving is equivalent to 70 percent of his final compensation (i.e., "[his] rate of pay at separation or [his] last full one year of payment"). (WCJ Hr'g Tr. at 34.) Mr. Kidwell also explained that

an individual who has been awarded a service-connected disability pension has the option of withdrawing his contributions or leaving them in Employer's pension fund to provide survivorship benefits. (WCJ Hr'g Tr. at 35–36.) According to Mr. Kidwell, Claimant elected to leave his contributions, which totaled $24,782.92, in Employer's pension fund to provide survivorship benefits for his wife. (WCJ Hr'g Tr. at 36–38, 49.) Mr. Kidwell further testified that Employer is the majority contributor to the pension fund and that the exact amount of Employer's contributions fluctuates from year to year. (WCJ Hr'g Tr. at 56–58.) Mr. Kidwell explained that Employer's funding of the pension fund is governed by the Municipal Pension Plan Funding Standard and Recovery Act (Act 205).[5] (WCJ Hr'g Tr. at 57.) Mr. Kidwell also explained that, pursuant to Act 205, Employer must contribute a minimum amount each year based on an actuarial evaluation and that it has been Employer's practice to contribute more than the minimum amount required under Act 205. (WCJ Hr'g Tr. at 59.) In addition to Mr. Kidwell's testimony, Employer also introduced into evidence the Pension Agreement and a document outlining the contributions to Employer's pension fund for the fiscal year ending June 30, 2000.

On July 31, 2003, the WCJ issued a decision and order in which he concluded that Employer's payment of service-connected disability pension benefits to Claimant was in lieu of workers' compensation and that Employer was entitled to a dollar-for-dollar offset/credit against workers' compensation for the pension benefits paid to Claimant. (WCJ Decision, Conclusions of Law (COL) ¶ 3, July 31, 2003.) The

5. Act of December 18, 1984, P.L. 1005, No. 205, *as amended*, 53 P.S. §§ 895.101– 895.1001.

WCJ also concluded that Employer violated the Act by ceasing payment of Claimant's workers' compensation benefits without obtaining or filing a supplemental agreement, final receipt, notice, or order from the Bureau of Workers' Compensation and, thus, awarded a penalty of $5,000.00. (COL ¶ 2.) The WCJ further concluded that Employer's contest was unreasonable in part and, thus, awarded attorney's fees to Claimant's counsel in the amount of $500.00. (COL ¶ 5.) Accordingly, the WCJ dismissed Claimant's Reinstatement Petitions, granted Claimant's Penalty Petitions, and granted Employer's Modification Petition.

Claimant appealed the WCJ's decision and order to the Board, arguing that the WCJ erred in concluding that Employer was entitled to a dollar-for-dollar offset/credit for 100 percent of the pension benefits paid to Claimant when Section 204(a) of the Act only permits an employer to take an offset/credit for pension benefits to the extent that the employer funded such benefits. On April 12, 2004, the Board, agreeing with Claimant, issued an opinion and order that affirmed the WCJ's grant of Employer's Modification Petition due to Employer's entitlement to an offset/credit, but remanded the matter to the WCJ to determine the amount of the offset/credit to which Employer was entitled pursuant to Section 204(a). (Board Op. at 5, Apr. 12, 2004.)

On remand, Employer presented the testimony of Douglas Rowe, an actuary who was assigned to review and audit Employer's pension plans, and introduced several letters, with attachments, from Mr. Rowe to Employer's counsel summarizing Mr. Rowe's actuarial findings. Mr. Rowe ultimately testified that he had calculated Employer's contribution rate to Claimant's pension plan as 73.149 percent. (WCJ Hr'g Tr. at 25–26, Feb. 28, 2006; Letter from Mr. Rowe to Martin G. Malloy, Employer's counsel (Dec. 8, 2005) at 1, Ex. No. E–3.) The WCJ accepted Mr. Rowe's testimony as credible and found that Employer contributed 73.149 percent of Claimant's pension benefits. (WCJ Decision, Findings of Fact (FOF) ¶ 13, July 13, 2007.) The WCJ, thus, concluded that Employer was entitled to a 73.149 percent offset/credit. (COL ¶ 2, July 13, 2007.)

■ Claimant appealed the WCJ's remand decision and order, arguing that the WCJ erred in basing his determination on Mr. Rowe's testimony because Mr. Rowe did not testify as to Employer's actual contributions and because Mr. Rowe failed to consider the effect of the contributions made by the Commonwealth under Act 205. Employer also appealed the WCJ's remand decision and order, contending that the WCJ erred by failing to award Employer a dollar-for-dollar offset/credit for 100 percent of the service-connected disability pension benefits paid to Claimant.[6] The Board concluded that Mr. Rowe's testimony providing actuarial estimates was sufficient and that he did take into account the Commonwealth's contributions. (Board Op. at 5, Apr. 22, 2008.) Further, the Board rejected Employer's

---

6. Additionally, Employer and Claimant both raised arguments regarding the WCJ's award of penalties, and Employer raised arguments regarding the WCJ's award of unreasonable contest attorney's fees. However, neither Employer nor Claimant appealed any issue concerning penalties or unreasonable contest attorney's fees following the WCJ's initial decision and order. Further, the WCJ did not, and was not required to, consider any issues regarding penalties or unreasonable contest attorney's fees on remand. Thus, the Board determined that Employer and Claimant failed to preserve any issues regarding penalties or unreasonable contest attorney's fees for its review. (Board Op. at 6–8, Apr. 22, 2008.)

argument that Employer was entitled to a dollar-for-dollar offset/credit for 100 percent of the pension benefits paid to Claimant. (Board Op. at 8.) Consequently, the Board affirmed the WCJ's decision and order on remand. Employer now petitions this Court for review of the Board's April 12, 2004 and April 22, 2008 orders.[7]

▪ Before this Court, Employer argues that the Board erred in reversing[8] and remanding the WCJ's initial decision and order where the WCJ "properly found [that Claimant's] service-connected disability pension represented payments in lieu of workers' compensation awarding [Employer] with a dollar for dollar credit for pension benefits paid." (Employer's Br. at 14.) Employer also argues that the Board erred in affirming the WCJ's remand decision and order "where he denied [Employer's] right to a dollar for dollar credit."[9] (Employer's Br. at 14.) Employer relies on *City of Philadelphia v. Workers' Compensation Appeal Board (Hunter)*, 912 A.2d 889 (Pa.Cmwlth.2006), and *Murphy v. Workers' Compensation Appeal Board (City of Philadelphia)*, 871 A.2d 312 (Pa. Cmwlth.2005), for the proposition that payments of service-connected disability pension benefits are payments in lieu of workers' compensation. Employer contends that Claimant is not entitled to receive both service-connected disability pension benefits and workers' compensation benefits for the same injury. Although it is not entirely clear from Employer's brief, we believe that Employer is essentially argu-

7. "Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated." *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221, 226 n. 1 (Pa. Cmwlth.2008).

8. Technically, the Board's April 12, 2004 order affirmed the WCJ's initial decision and order granting Employer's Modification Petition, and remanded the matter to the WCJ to determine the amount of the offset to which Employer was entitled pursuant to Section 204(a). (Board Op. and Order, Apr. 12, 2004.)

9. Employer sets out four questions in its Statement of Questions Involved: (1) "Whether the [Board] erred in reversing and remanding the July 31, 2003 decision of the [WCJ] where the [WCJ's] decision was supported by substantial competent evidence and was a reasoned decision"; (2) "Whether the [Board] erred in affirming the July 13, 2007 decision of the [WCJ] where the [WCJ's] decision was not supported by substantial competent evidence and was not a reasoned decision"; (3) "Whether the [Board] erred in reversing and remanding the July 31, 2003 decision and affirming the July 13, 2007 decision of the [WCJ] where [Claimant's] benefits should not be reinstated as service-connected disability pension payments represent payments in lieu

of workers' compensation benefits"; and (4) "Whether this honorable Court should distinguish this matter from its recent holding in *City of Philadelphia v. WCAB (Andrews)* where [Claimant] does not contribute to his service-connected disability pension." (Employer's Br. at 6.) However, questions 1 & 2 are not addressed at all in the Argument section of Employer's brief. We note that Pennsylvania Rule of Appellate Procedure 2119(a) requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Here, Employer did not comply with the rule. Instead, Employer listed three questions (1, 2, & 3) together as headings in one part of its Argument and failed to address two of the questions (1 & 2) at all in the brief. In so far as Employer has not developed two of the questions (1 & 2) in its brief, they have been waived. *See American Rock Mechanics, Inc. v. Workers' Compensation Appeal Board (Bik and Lehigh Concrete Technologies)*, 881 A.2d 54, 56 (Pa.Cmwlth.2005) (concluding that the petitioner waived arguments that it raised in its statement of questions presented, but which it failed to properly develop in the argument section of its brief).

ing that it is entitled to a dollar-for-dollar offset/credit for 100 percent of the service-connected disability pension benefits paid to Claimant because those benefits were paid to Claimant in lieu of workers' compensation.

In 1996, the General Assembly, through Act 57, amended Section 204(a) of the Act to specifically allow an employer to take an offset/credit against a workers' compensation award for pension benefits paid to a claimant "to the extent funded by the employer directly liable for the payment of compensation."[10] Section 3 of Act 57. Prior to the amendments to Section 204(a), employers were allowed to take an offset/credit for pension benefits, as long as those benefits were paid in lieu of workers' compensation, and were not in the nature of deferred compensation. *E.g., Toborkey v. Workmen's Compensation Appeal Board (H.J.Heinz),* 655 A.2d 636, 641 (Pa. Cmwlth.1995) (denying the employer an offset/credit where pension benefits were in the nature of deferred compensation, and not in lieu of workers' compensation); *Murhon v. Workmen's Compensation Appeal Board (Kawecki Berylco, Inc.),* 152 Pa.Cmwlth. 229, 618 A.2d 1178, 1181–82 (1992) (allowing the employer an offset/credit where disability pension benefits were paid in lieu of workers' compensation). This Court previously explained the effects of the amendments to Section 204(a) in *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews),* 948 A.2d 221 (Pa.Cmwlth.2008). There, Employer sought to take an offset/credit for 100 percent of the service-connected

disability pension benefits that were paid to the claimant in that case, Cynthia Andrews (Andrews). *Id.* at 224. The WCJ, after giving Employer numerous opportunities to present evidence regarding the extent that it funded Andrews' pension benefits, determined that Employer had failed to prove that it was entitled to an offset/credit. *Id.* at 225. The Board affirmed the WCJ's decision on appeal. *Id.* at 226. Employer subsequently petitioned this Court for review and, relying primarily on *Hunter* and *Murphy,* raised arguments similar to those which it advances in the present case. In addressing Employer's arguments, this Court explained:

> Both of these cases [*Hunter* and *Murphy*] do hold that Employer may offset a claimant's workers' compensation benefits in light of her receipt of a service-connected disability pension as the payments made pursuant to the pension plan are in lieu of compensation. Employer's reliance on these cases is misplaced, however, as the claimants in those cases were injured prior to the effective date of Act 57.
>
> . . . .
>
> Claimant sustained her injury on May 30, 2000, well after the effective date of Act 57. Consequently, pursuant to Sections 32.1 and 33 of Act 57, amended Section 204(a) of the Act controls her entitlement to workers' compensation benefits, or, more accurately, Employer's ability to offset the same. As indicated in Section 204(a) of the Act and Section 123.8(b) of the Act 57 Regulations, Employer may take a credit for

---

**10.** Section 32.1(a) of Act 57 provides that "[t]he amendment . . . of section[ ] 204(a) . . . shall apply only to claims for injuries which are suffered on or after the effective date of this section." According to Section 33(1)(iii) of Act 57, Section 32.1 of Act 57 became effective immediately upon enactment, which occurred on June 24, 1996. We note, howev-

er, that pursuant to Section 33(2) of Act 57, the amendments to Section 204(a), as well as numerous other portions of Act 57, became effective 60 days from June 24, 1996. For purposes of this opinion, when we refer to the effective date of Act 57, we are referring to June 24, 1996.

Claimant's receipt of pension benefits in defined-benefit and defined-contribution plans to the extent it funded those benefits. *The Employer's right to a pension offset in post-Act 57 cases no longer turns on whether the pension constitutes payments in lieu of compensation. Nor does it matter, contrary to Employers' [sic] assertion, that the pension is a service-connected disability pension. In so holding, we do not suggest in any fashion that Hunter or Murphy, or any of the cases that predated those opinions that discussed the issue of whether a claimant's pension benefits were paid in lieu of compensation as opposed to deferred compensation, are no longer good law. The scope of those cases, however, is limited to matters wherein the claimant was injured prior to the effective date of Act 57.*

*In order to take advantage of amended Section 204(a) of the Act allowing for Employer to offset Claimant's workers' compensation benefits in light of Claimant's receipt of a pension, [Employer] needed to present evidence as to the extent it funded the pension plan.*

*Id.* at 226–28 (emphasis added). Because Employer failed to present any evidence establishing the extent to which it funded Andrews' pension benefits, we concluded that Employer was properly denied an offset/credit. *Id.* at 228.

■ Based on *Andrews*, it is clear that where an injury occurs on or after the effective date of Act 57, our precedent, such as *Hunter* and *Murphy*, which apply

the "in lieu of compensation" standard, are inapplicable. Instead, under amended Section 204(a), an employer is entitled to an offset/credit for *any* type of pension benefits paid to a claimant, but the amount of the offset/credit which an employer may take is limited to the extent the employer funded such benefits.[11] For example, if an employer proves that it funds 70 percent of a claimant's pension benefits, the employer is entitled to take a dollar-for-dollar offset/credit equal to 70 percent of the claimant's pension benefits against the claimant's workers' compensation benefits. *See* 34 Pa.Code § 123.1 (providing that "[o]ffsets shall be dollar-for-dollar and calculated as set forth in §§ 123.4–123.11"); 34 Pa.Code § 123.8 (providing that "[w]orkers' compensation benefits otherwise payable shall be offset by the net amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation").

Employer argues that the present case should be distinguished from *Andrews*. Employer contends that the holding in that case was based on the understanding that the purpose behind amending Section 204(a) was to prohibit employers from using an employee's own pension contributions to satisfy its workers' compensation obligations. Employer asserts that because the recipient of a service-connected disability pension has the option of withdrawing his contributions or using his contributions to purchase survivorship benefits, Employer is not using the recipient's

11. We note that even before the amendments to Section 204(a), this Court limited the amount of the offset/credit to which an employer was entitled based on how much of the benefits were paid for by the employer. *Compare Murhon*, 618 A.2d at 1182 (allowing the employer to take a 100 percent offset/credit where the employer paid for 100 percent of the benefits), *with School District of Philadel-*

*phia v. Workmen's Compensation Appeal Board (March)*, 109 Pa.Cmwlth. 463, 531 A.2d 547, 551 (1987) (allowing the employer to take a 50 percent offset/credit where the employer paid for 50 percent of the benefits), *disapproved on other grounds, Hastings Industries v. Workmen's Compensation Appeal Board (Hyatt)*, 531 Pa. 186, 611 A.2d 1187 (1992).

own pension fund contributions to satisfy its workers' compensation obligations. Thus, according to Employer, Section 204(a) is irrelevant in cases such as this one. What Employer fails to recognize, however, is that *Andrews* also involved service-connected disability pension benefits, and there, we held that amended Section 204(a) governed Employer's right to an offset/credit. We did observe in *Andrews* that one of the purposes behind the amendments to Section 204(a) was to prohibit employers from utilizing an employee's own pension fund contributions to satisfy its workers' compensation obligations. *Andrews,* 948 A.2d at 227. However, we did not state, nor did we imply, that an employer must be using an employee's pension fund contributions to satisfy its workers' compensation obligations in order for amended Section 204(a) to be applicable. Such an interpretation would have been contrary to the plain language of the Act. When a claimant's work injury occurs on or after the effective date of Act 57, amended Section 204(a) is applicable and controls an employer's entitlement to an offset/credit.

Here, Claimant's injury occurred on August 2, 1999, which was well after the effective date of Act 57, and therefore, amended Section 204(a) is controlling. Under amended Section 204(a), Employer is entitled to an offset/credit for the service-connected disability pension benefits that it paid to Claimant. Thus, the WCJ did not err in granting Employer's Modification Petition due to Employer's entitlement to an offset. However, amended Section 204(a) expressly limits the amount of the offset/credit which Employer is entitled to take to the extent that Employer funded Claimant's service-connected disability pension benefits. Because the

WCJ initially determined that Employer was entitled to a dollar-for-dollar offset/credit for 100 percent of the pension benefits paid to Claimant without considering the extent to which Employer funded Claimant's pension benefits, the WCJ erred. Therefore, we conclude that the Board properly affirmed the WCJ's initial decision and order granting Employer's Modification Petition due to Employer's entitlement to an offset and remanded the matter to the WCJ to render a determination as to the extent of the offset to which Employer was entitled in light of amended Section 204(a).

■■ In cases such as this one, which involve a defined benefit plan,[12] "an employer cannot provide evidence of actual contributions for the use of an individual member" and, therefore, must "meet its burden of proof ... with expert actuarial testimony." *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal),* 911 A.2d 225, 232 (Pa. Cmwlth.2006); *see also Andrews,* 948 A.2d at 227 (stating that "[w]here there is a defined-benefit plan, an employer cannot meet its burden of establishing the amount of its offset absent actuarial testimony"). If the actuarial testimony is accepted as credible, it is legally sufficient to establish the extent of an employer's funding for offset/credit purposes. *Hensal,* 911 A.2d at 232.

■ The record reveals that, after the matter was remanded to the WCJ, Employer presented the actuarial testimony of Mr. Rowe. Mr. Rowe testified that, in order to calculate Employer's funding to Pension Plan J for each year, he first took Employer's normal cost as a percentage of Employer's payroll and added it to the amortization payment (the amount Employer must pay each year to bring its

---

12. A defined-benefit plan is "[a] pension plan in which the benefit level is established at the commencement of the plan and actuarial cal-

culations determine the varying contributions necessary to fund the benefit at an employe's retirement." 34 Pa.Code § 123.2.

assets up to its liabilities) as a percentage of payroll to arrive at Employer's total costs. (WCJ Hr'g Tr. at 22–23, Feb. 28, 2006.) He then added the employee's normal cost to Employer's total costs and divided that figure by Employer's total costs to ascertain Employer's contribution rate. (WCJ Hr'g Tr. at 23.) Mr. Rowe then averaged the contribution rates for each year to determine Employer's overall contribution rate. (WCJ Hr'g Tr. at 23–24.) Mr. Rowe testified that he first calculated Employer's overall contribution rate as 72.78 percent, as indicated in his October 25, 2005 letter. (WCJ Hr'g Tr. at 23; Letter from Mr. Rowe to Employer's counsel (Oct. 25, 2005) at 1, Ex No. E–2.) In arriving at this figure, Mr. Rowe used the contribution rate from 1987 for the years from 1986 though 1981 because information for those years was not available. (WCJ Hr'g Tr. at 23–24; Letter from Mr. Rowe to Employer's counsel (Oct. 25, 2005) at 1, Ex No. E–2.) However, Mr. Rowe was later provided with information for 1985 and 1981 and, based on this new information, determined that Employer's overall contribution rate was 73.149 percent, as indicated in his December 8, 2005 letter. (WCJ Hr'g Tr. 25–26; Letter from Mr. Rowe to Employer's counsel (Dec. 8, 2005) at 1, Ex. No. E–3.)

The WCJ accepted Mr. Rowe's testimony as credible. The WCJ is "the ultimate finder of fact and exclusive arbiter of credibility and evidentiary weight." *Department of Public Welfare/Western Center v. Workers' Compensation Appeal Board (Cato)*, 911 A.2d 241, 246 (Pa.Cmwlth.2006) (quoting *Daniels v. Workers' Compensation Appeal Board (Tristate Transp.)*, 574 Pa. 61, 76, 828 A.2d 1043, 1052 (2003)). As Mr. Rowe's testimony was accepted as credible, it is sufficient to support the WCJ's determination that Employer is entitled to a 73.149 percent offset/credit.[13] Therefore, we conclude that the Board did not err in affirming the WCJ's decision and order granting Employer an offset/credit for 73.149 percent of the pension benefits paid to Claimant.

Accordingly, the Board's orders are affirmed.

## ORDER

**NOW**, March 27, 2009, the orders of the Workers' Compensation Appeal Board in the above-captioned matter are hereby **affirmed.**

13. Mr. Rowe testified that, in calculating Employer's contribution rate, he treated contributions that were made by the Commonwealth directly into the pension fund between 1990 and 1997 separately from Employer's contributions. (WCJ Hr'g Tr. at 44–45; Attachment II to Letter from Mr. Rowe to Employer's counsel (Dec. 8, 2005) Ex. No. E–3.) Mr. Rowe also testified that, after 1997, the Commonwealth stopped making contributions directly into the pension fund, and, instead, made contributions into Employer's general accounts, which could be used at Employer's discretion for pension purposes or for other purposes. (WCJ Hr'g Tr. at 45.) Because of this change, Mr. Rowe was unable to determine what percentage of Pension Plan J, if any, was funded through aid from the Commonwealth in 1998 and the years that followed. (WCJ Hr'g Tr. at 45.) Mr. Rowe's testimony sufficiently establishes that he did not treat the Commonwealth aid that was specifically designated to be used for pension benefits as part of Employer's contributions in determining the amount of the offset/credit to which Employer is entitled. *See Township of Lower Merion v. Workers' Compensation Appeal Board (Tansey)*, 783 A.2d 878, 881–82 (Pa.Cmwlth.2001) (holding that contributions made by the Commonwealth under Act 205 that are specifically designated to be used for pension benefits never become a municipality's money and, therefore, may not be considered as part of the municipality's contributions for offset/credit purposes).